# EXHIBIT A



STEPHANIE E. LOMAX, Plaintiff, -against- AEGIS FUNDING CORPORATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. P.O. BOX 2026, FLINT, MI. 48501, Defendants.

09-CV-2321 (ARR)(LB)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2010 U.S. Dist. LEXIS 39075*

April 19, 2010, Decided
April 19, 2010, Filed

**NOTICE:**    NOT INTENDED FOR PUBLICATION IN PRINT

**COUNSEL:**  [*1] Stephanie E. Lomax, Plaintiff, Pro se, Fresh Meadows, NY.

For OneWest Bank, F.S.B., Defendant: Eric S. Weinstein, LEAD ATTORNEY, Feldman Weinstein LLP, New York, NY; Jennifer Marie Hall, Feldman, Weinstein & Smith LLP, New York, NY.

**JUDGES:** Allyne R. Ross, United States District Judge.

**OPINION BY:** Allyne R. Ross

**OPINION**

ORDER

ROSS, United States District Judge: :

Plaintiff Stephanie Lomax ("Lomax"), proceeding pro se, asserts various state law claims against defendants Aegis Funding Corporation ("Aegis") and Mortgage Electronic Registration Systems ("MERS") stemming from three separate mortgages on plaintiff's Virginia Beach property. Defendants now move to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. Plaintiff has filed no opposition to the motion.

**BACKGROUND**

From 2003 to 2005, Lomax, a resident of New York, applied for and received three separate mortgages on a property in Virginia Beach, Virginia. (Compl. Ex. A, Ex.

B, Ex. C.) The first mortgage, valued at $ 67,000, was signed on June 3, 2003.  MERS is the named beneficiary and Aegis is the lender on this mortgage. (Compl. Ex. A.) The second mortgage was signed on July 8, 2004 for $ 360,000. Macquarie Bank ("Macquarie"), not named as a defendant in  [*2] this case, was the lender. (Compl. Ex. B.) The third and final mortgage named MERS as the beneficiary and IndyMac Bank, also not a named defendant, as the lender. This mortgage was signed on December 23, 2005 for the amount of $ 440,000. (Compl. Ex. C.)

> 1    Plaintiff has appended three deeds of trust to her complaint. For the sake of simplicity, this opinion often refers to the individual mortgages rather than the deeds of trust.

Plaintiff characterizes the Virginia Beach property as one of "several investment properties," but notes that in the current economic climate she is unable to make the required monthly payments. (Compl. P 20.) She adds that this is due, in part, to the fact that the tenants to whom she rents the property are "not . . . able to pay the rent on time each month." [2] (Compl. P 20.) Plaintiff also asserts that she is unable to make the necessary mortgage payments because defendants inflated the cost of her "mortgage on the basis of fraudulent means and miscalculations." (Compl. P 5.) In addition to claiming "predatory" [*3] lending and mortgage fraud, Lomax also asserts a number of deficiencies with the assignment of the second deed by Macquarie. (Compl. PP 10, 15, 26, 28).

> 2    OneWest Bank, in bringing this motion to dismiss, correctly notes that while plaintiff admits

to using the property as a rental property, the riders attached to the deeds of trust specifically state that the property is to be used only as a second home, not as a rental. (See Compl. Px. B, Ex. C.) Plaintiff's admission is immaterial to this motion.

Since these mortgages were first issued, the relevant parties changed in key respects. In 2005, Macquarie assigned its interest in the second mortgage to Wachovia Bank. [3] (Compl. Ex. B) ("Notice of Assignment of Deed of Trust"). On July 11, 2008, the Office of Thrift Supervision closed IndyMac Bank and appointed the FDIC as Receiver, creating "IndyMac Federal Bank, F.S.B." (Johnson-Seck Decl. P 3.) Finally, on March 19, 2009, OneWest Bank ("OneWest") purchased certain assets held by IndyMac Federal Bank, including the $ 440,000 mortgage secured by Lomax's Virginia Beach property. (Johnson-Seck Decl. P 4.) As a result, OneWest has an interest in this litigation similar to Aegis and MERS, the [*4] named defendants.

> 3    Wachovia Bank, like Macquarie, its predecessor in interest on the second mortgage, was not named as a party to this litigation. (See Compl. at 1.)

One West, holding an interest in plaintiff's third mortgage but not named in the complaint, now moves to dismiss the complaint under *Rule 12(b)(6)* as it relates to all defendants. The arguments presented in the motion to dismiss apply equally to OneWest, Aegis, and MERS and therefore, this court will examine plaintiff's claims as they relate both to OneWest and to the named defendants.

## APPLICABLE STANDARDS

### A. *Rule 12(b)(6)* Dismissal Standard

Under *Rule 8(a)(2)*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. Accordingly, a complaint must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). Under *Rule 12(b)(6)*, a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*.

In adjudicating a motion to dismiss, the court [*5] assumes the truth of all factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See, e.g., *Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)*; *Global Network Commc'ns, Inc. v. City of*

*N.Y., 458 F.3d 150, 154 (2d Cir. 2006)*. However, "[w]hile legal conclusions can provide the framework of a complaint," neither "legal conclusions" nor "conclusory statements" are alone sufficient, nor are such statements entitled to a presumption of truth. See *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)*. Thus, in evaluating motions to dismiss pursuant to *Rule 12(b)(6)*, a court must identify a complaint's non-conclusory factual allegations and then determine whether those allegations, taken as true and construed in the plaintiff's favor, "plausibly give rise to an entitlement to relief." Id.

Plausibility, in this context, does not refer to the likelihood of success on the merits of the legal claim, but asks whether a complaint's "[f]actual allegations . . . [are] enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*; see also *Iqbal, 129 S. Ct. at 1949* ("The plausibility standard is not akin to a 'probability [*6] requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also *Twombly, 550 U.S. at 570* (Thus, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, 129 S. Ct. at 1950*.

### B. Dismissal of Pro Se Complaints

Complaints filed by pro se litigants are held to "less stringent 'standards than formal pleadings drafted by lawyers." *Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*. "When considering motions to dismiss a pro se complaint, . . . 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002)* (quoting *Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)*; [*7] (alterations in original). Even after *Twombly* and *Iqbal*, pro se complaints are entitled to liberal construction when they "contain sufficient factual content to allow the district court 'to draw the reasonable inference that the defendant[s] [were] liable for the misconduct alleged." *Schwamborn v. City of Nassau, 348 Fed. Appx. 634, 2009 WL 3199003, at *1 (2d Cir. 2009)* (quoting *Iqbal, 129 S. Ct. at 1949*). Yet when evaluating such a complaint, "the [c]ourt is also aware that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Iwachiw v. N.Y. City Bd. of Educ., 194 F. Supp. 2d*

*191, 202 (E.D.N.Y. 2002)* (internal quotation marks omitted); *see also Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681-82, 386 U.S. App. D.C. 144 (D.C. Cir. 2009)* ("[E]ven a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Iqbal, 129 S. Ct. at 1950*).

### C. Conflicts of Law

In this case, Lomax asserts exclusively state common law claims. Because jurisdiction here is based on diversity of citizenship, this court must apply the choice of law rules of New York, the forum state. See *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)*; [*8] *Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999)*. Under New York's choice of law rules, the first question a court must address is whether a choice of law analysis would make a difference -- "whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co., 81 N.Y.2d 219, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904 (N.Y. 1993)*. Only where the relevant states' laws provide different substantive rules must a conflict of laws analysis actually be performed. See, e.g., *Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir. 1996)* (finding conflict where only Ohio law allowed for consideration of loss of society for damages purposes); *Bader v. Purdum, 841 F.2d 38, 39-40 (2d Cir. 1988)* (finding conflict concerning availability of recovery against a parent for negligent supervision). Where the laws at issue are not in actual conflict, the court applies New York law. See *Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998)* ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis."); *Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000)* ("A court is free to bypass the choice of law analysis [*9] and apply New York law in the absence of a material conflict.").

### DISCUSSION

Lomax raises several tort and contract claims against defendants. In measuring these claims against the federal pleading requirements, it ultimately is of no consequence whether this court applies Virginia or New York law. See *Simon, 124 F. Supp. 2d at 71*. Given the level of generality at which plaintiff's allegations are framed, no matter which substantive law is applied, plaintiff has failed to state claims entitling her to relief.

### 1. First Claim: Negligent Assignment

This claim asserts that defendants "negligently omitted significant documentation and other supportive evidence" in assigning the deed of trust. (Compl. P 15.) A fundamental shortcoming of this claim, and the com-

plaint more generally, is the fact that neither the named defendants, nor OneWest, were in any way involved in the allegedly deficient assignment of the second mortgage. This is not a judgment about the merits of plaintiff's assignment claim, but a natural conclusion from plaintiff's own exhibits, which demonstrate that the second mortgage was assigned from Macquarie to Wachovia Bank. (See Compl. Ex. D.) Aegis, MERS, and OneWest were simply [*10] not involved in the transaction. Thus, none of Lomax's allegations regarding the assignment can state a claim against Aegis, MERS, or OneWest.

### 2. Second Claim: Wantonness

Lomax's second claim for "wantonness" alleges that defendants "consciously and intentionally" "conspir[ed] to issue [her] a high cost loan" without regard to whether she would be able to repay the loan amount. (Compl. P 19.) Plaintiff states that these "wicked" actions were intended to "increase the profits for the lending bank" and "to cause economical injury and financial lost [sic] of equity to [plaintiff]." (Compl. P 23.)

Plaintiff's allegations sound like a claim for tortious interference with the mortgage contracts. See, e.g., *Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97, 102 (Va. 1985)* (stating the basic elements of tortious interference with contract under Virginia law); *Kay v. Sussel, 22 Misc. 2d 627, 199 N.Y.S.2d 186, 181 (Sup. Ct. 1960)* (recognizing cause of action for conspiracy to induce breach of contract); *Louis C. Moser & Co. v. Kremer, 192 Misc. 85, 80 N.Y.S.2d 199, 201 (App. Term 1948)* (same). Yet plaintiff has not made any allegations as to how defendants inflated the price of her mortgages. For example, she has not cited any "false [*11] or misleading" representations that may have caused her to enter these onerous mortgages in the first place. See *Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769 (App. Div. 1995)*. Without allegations of particular wrongful acts that furthered the conspiracy and caused injury, this cause of action cannot proceed. See *Senrow Concessions, Inc. v. Shelton Properties, Inc., 10 N.Y.2d 320, 178 N.E.2d 726, 729, 222 N.Y.S.2d 329 (N.Y. 1961)*.

The same result is compelled if this cause of action is interpreted as a claim for wanton negligence or willful misconduct. While the alleged outline of events may provide a rough framework for a claim, the complete lack of specific factual allegations do not raise the claim "above the speculative level." See *Twombly, 550 U.S. at 555*. Though there may be a "sheer possibility" that defendants were involved in some sort of predatory lending, the complaint provides no basis for finding the requisite plausibility. See *Iqbal, 129 S. Ct. at 1949*.

The same result is also compelled if plaintiff's claim is construed as a claim under state banking statutes, although plaintiff makes no reference to such statutes. Both New York and Virginia laws protect against certain forms of predatory lending practices [*12] in an attempt to limit "high-cost home loans." See *N.Y. Banking Law § 6-l* (McKinney 2010) *; Va. Code Ann. § 6.1-422* (2010). However, plaintiff has not noted any particular practice that defendants engaged in -- such as "flipping" -- which could be construed as a prohibited act. Plaintiff has not even alleged any facts from which the court might infer such practices. Moreover, the interest rates on the Virginia Beach mortgages do not exceed the maximum contractual rates permitted by statute. Compare Compl. Ex. C (6.75 percent rate), with *N.Y. Banking Law § 14-a(1)* (McKinney 2010) (16 percent maximum) and *Va. Code Ann. § 6.1-330.55* (2010) (12 percent maximum).

> 4  However, Lomax cannot seek protection under these laws because the property in question is not located in New York. *N.Y. Banking Law § 6-l.1(e)(v)* (McKinney 2010).

At the conclusion of this claim, plaintiff, in passing, adds an allegation of "trespass", though her description sounds closer to common law nuisance. She notes that she "ha[s] been deprived of the peaceful enjoyment of [her] property" as a result of defendants' actions. (Compl. P 24.) Whether this claim was meant to state trespass or nuisance, the allegations are insufficient [*13] to state a claim. A claim for trespass must allege some "affirmative act constituting or resulting in an intentional intrusion upon [plaintiff's] property." See *Stage Club Corp. v. West Realty Co., 212 A.D.2d 458, 622 N.Y.S.2d 948, 951 (App. Div. 1995)*. Private nuisance is a substantial and unreasonable interference with the use or enjoyment of a land owner or land possessor's property interests. See *Restatement (Second) of Torts § 821D* ("A private nuisance is a nontrespassory invasion of another's interest in the private use an enjoyment of land"). According to the Virginia Supreme Court, nuisance "embraces everything that endangers life or health, or obstructs the reasonable and comfortable use of property." See *Bowers v. Westvaco Corp., 244 Va. 139, 419 S.E.2d 661, 665, 8 Va. Law Rep. 3316 (Va. 1992)* (adopting *Restatement § 821D*). Plaintiff has alleged absolutely no facts to sustain either a trespass or a nuisance claim. It is not sufficient to simply assert that a trespass occurred; such a limited pleading is precisely the type of "legal conclusion[ ]" or "conclusory statement[ ]" that is not entitled to a presumption of truth and is insufficient to survive a motion to dismiss. See *Iqbal, 129 S. Ct. at 1949-50*.

3. Third Claim:  [*14] Abuse of the Mortgage Process

Plaintiff's third claim is for abuse of the mortgage process. Lomax alleges that "defendants . . . should have known that the assignment of mortgage and or the assignment of deed of trust was defective on its face." (Compl. P 26.) She continues to allege that defendants "participated in mortgage fraud" and issued a high cost predatory loan. These allegations have been largely dealt with above. Without additional specifics, simply titling the cause of action differently does not produce a different result.

New York defines abuse of process "as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 38 N.Y.2d 397, 343 N.E.2d 278, 280, 380 N.Y.S.2d 635 (N.Y. 1975)*. In order to state an abuse of process claim under New York law, plaintiff must, among other things, allege that "the person activating the process [was] moved by a purpose to do harm without . . . excuse or justification." *Id. at 283*. This motive requires an improper purpose that is "collateral" to the object of the normal process and that "offends the spirit of the legal procedure  [*15] itself." *Id. at 281, 283*; see also *Hauser v. Bartow, 273 N.Y. 370, 7 N.E.2d 268, 269 (N.Y. 1937)* ("The gist of the action for abuse of process lies in the improper use of process after it is issued.") Similarly, "[f]or an abuse of process claim [in Virginia] to survive a challenge by demurrer, one must plead: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" *Ely v. Whitlock, 238 Va. 670, 385 S.E.2d 893, 897, 6 Va. Law Rep. 804 (Va. 1989)* (quoting *Donohoe Constr. v. Mount Vernon Assoc, 235 Va. 531, 369 S.E.2d 857, 862, 4 Va. Law Rep. 3040 (Va. 1988)*).

Here, Lomax has alleged no facts that would indicate the mortgage process was used for ulterior motives. Cf. *Key Bank of N. N.Y., N.A. v. Lake Placid Co., 103 A.D.2d 19, 479 N.Y.S.2d 862, 867 (App. Div. 1984)* ("[P]laintiff held mortgages which became in default and this [foreclosure] action is the proper legal means to litigate such matter."). Moreover, abuse of the process under Virginia law requires wrongful use of the process after it was issued. See *Triangle Auto Auction v. Cash, 238 Va. 183, 380 S.E.2d 649, 650, 5 Va. Law Rep. 2900 (Va. 1989)*. No such allegations were made here. The shortcomings of plaintiff's allegations are all the more critical given that she alleges  [*16] a fraud, which, under *Rule 9(b)*, requires that the claimant "must state with particularity the circumstances constituting fraud." *Fed. R. Civ. P. 9(b)*. Plaintiff's conclusory allegations are wholly insufficient to state a claim for abuse of the mortgage process.

### 4. Fourth Claim: Slander of Title

In plaintiff's cause of action for slander of title, she does little more than reiterate her claims of "mortgage fraud" and issuance of a "high cost loan." (See Compl. P 30.)

Under Virginia law, an action for slander of title requires "(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages." *Bison Bldg. Co., LLC v. Brown*, 70 Va. Cir. 348, 355 *(Cir. Ct. 2006)*. Similarly, under New York law, an action for slander of title requires the false disparagement of the title of another's property, resulting in "special damages." See, e.g., *Rosenbaum v. City of N.Y.*, 8 N.Y.3d 1, 861 N.E.2d 43, 48-49, 828 N.Y.S.2d 228 (N.Y. 2006). Plaintiff must also allege that the defendant acted with "malice" in making such false statements with respect to the title. See, e.g., *Kirkland v. Am. Title Ins. Co.*, 692 F. Supp. 153, 157 *(E.D.N.Y. 1988)* (applying New York [*17] law). Lomax has failed to allege anything resembling a slanderous utterance or publication. Nor has she alleged facts that might support an inference of malice or special damages. Failing in all of these elements, the claim of slander of title is dismissed.

### 5. Fifth Claim: Wrongful Mortgage

Plaintiff's fifth claim for "wrongful" mortgage adds no new allegations to what has been discussed above. Given this overlap, plaintiff's claim is dismissed for failure to state a claim.

### 6. Sixth Claim: Unjust Enrichment

Plaintiff's penultimate claim is for unjust enrichment. An unjust enrichment claim is "based on . . . equitable principles that a person shall not be allowed to enrich himself unjustly at expense of another." *Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552, 556 *(App. Div. 1983)*; see also *Kern v. Freed Company, Inc.*, 224 Va. 678, 299 S.E.2d 363, 365 *(Va. 1983)* (Virginia law on unjust enrichment is based on the equitable principle that "a man shall not be allowed to enrich himself unjustly at the expense of another.").

Under both Virginia and New York law, a claim for unjust enrichment, sounding in quasi-contract, is not normally appropriate when a written contract on the same subject exists. [*18] See *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.") (internal citations omitted); *Ellis & Myers*

*Lumber Co. v. Hubbard*, 123 Va. 481, 96 S.E. 754, 760 *(Va. 1918)* (Where there is a legally enforceable, valid, and express contract between the parties, the "law will not imply a contract in contravention thereof."). Therefore, insofar as this claim is based on the terms of the mortgage contract itself, Lomax cannot bring a claim in quasi-contract for unjust enrichment. See, e.g., *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 587 (2d Cir. 2006) ("[U]nder New York law, those hospitals subject to [the agreements] clearly may not recover under a theory of unjust enrichment, inasmuch as the valid and enforceable written [agreements] governed the particular subject matter of this case.").

Additionally, a claim for unjust enrichment must specify the manner and extent to which the defendant was unjustly enriched. See, e.g., *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 790 N.Y.S.2d 143, 145 (App. Div. 2005) {*19] ("[T]he plaintiff's allegation that the appellants received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment."); *Nedrich v. Jones*, 245 Va. 465, 429 S.E.2d 201, 207, 9 Va. Law Rep. 1239 (Va. 1993) ("One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit."). The complaint alleges nothing with regard to how the accrued benefits were undeserved or how they were inequitably retained. For all these reasons, plaintiff's claim for unjust enrichment is dismissed.

### 7. Seventh Claim: Civil Conspiracy

Plaintiff's final claim alleges an "unlawful combination and conspiracy to construct a high cost loan against plaintiff for the purpose of unjustly enriching [defendants]." (Compl. P 38.) She notes that "[a]s a result of the civil conspiracy, civil wrongs were committed against the plaintiffs and other consumers, not yet named herein." (Compl. P 39.)

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in [*20] damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 321 S.E.2d 69, 74 (Va. 1984). Under Virginia law, a claim of civil conspiracy is not a free standing cause of action; it is predicated upon the independent tortious conduct of a defendant. Logically, "without proof of the underlying tort, there can be no conspiracy to commit the tort." *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 484 S.E.2d 892, 896 (Va. 1997). "Thus, if Plaintiff's Motion for Judgment fails to state a particular cause of action, then no conspiracy to commit the corresponding cause of action will survive demurrer." *Almy v. Grisham*,

55 *Va. Cir. 401, 404 (Cir. Ct. 2001)*. New York law is the same in this regard. See *Block v. Chassin, 36 A.D.2d 703, 319 N.Y.S.2d 86, 86 (App. Div. 1971)* ("With the underpinnings of the substantive alleged tortious conduct dismissed, the charge of conspiracy to effectuate them adds nothing and must also fall."). Accordingly, after dismissing plaintiff's six underlying claims, this claim for civil conspiracy predicated on the same allegations must also be dismissed.

## CONCLUSION

For the reasons discussed above, the motion to dismiss is granted as to all claims. Plaintiff's complaint is dismissed with leave to replead within [*21] 14 days of the date of this order. Plaintiff is cautioned, however, that she should not seek to replead any claims with respect to which she cannot, in good faith, allege all factual matters essential to state a cause of action. If no amended pleading is filed by May 4, 2010, the Clerk of the Court is directed to enter judgment on that date.

SO ORDERED.

/s/ Allyne R. Ross

Allyne R. Ross

United States District Judge

Dated: April 19, 2010

Brooklyn, New York



DARIUSZ WOJCIECH MAZURKIEWICZ, Plaintiff, -against- NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, et al., Defendants.

09 Civ. 5962 (WHP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2010 U.S. Dist. LEXIS 107697*

September 16, 2010, Decided
September 16, 2010, Filed

COUNSEL: [*1] Dariusz Wojciech Mazurkiewicz, Plaintiff, Pro se, Woodhaven, NY.

For New York City Health and Hospitals Corporation, Diana K. Santos, Virginia Aldrich, Naimah Cassandra Simmons, Robert Boyd, Joseph LeConte, Juanita Barnes, Katori Anderson, Rebecca Rachel Hirschklau, Defendants: New York City Law Department, New York, NY.

For Bellevue Hospital Center, Defendant: Rebecca Rachel Hirschklau, LEAD ATTORNEY, New York City Law Department, New York, NY.

JUDGES: WILLIAM H. PAULEY III, District Judge.

OPINION BY: WILLIAM H. PAULEY III

OPINION

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff pro se Dariusz Wojciech Mazurkiewicz ("Mazurkiewicz") brings this employment discrimination action against Defendants New York City Health and Hospitals Corporation ("HHC"), Bellevue Hospital Center ("Bellevue"), Diana K. Santos ("Santos"), Virginia Aldrich ("Aldrich"), Naimah Cassandra Simmons ("Simmons"), Robert Boyd ("Boyd"), Joseph Leconte ("Leconte"), Juanita Barnes ("Barnes"), and Katori Anderson ("Anderson" and, collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against him on the basis of his race, national origin, gender, and religion in violation of 42 U.S.C. §§ 1981, 1986, 2000e

(Title [*2] VII), New York State Human Rights Law, and the New York City Administrative Code. Mazurkiewicz also asserts a breach of contract claim. Defendants move for judgment on the pleadings pursuant to *Rule 12(c) of the Federal Rules of Civil Procedure.* For the following reasons, Defendants' motion is granted.

BACKGROUND

The underlying facts relating to Mazurkiewicz's employment at HHC are described in a thorough opinion by District Judge Colleen McMahon dismissing his earlier employment discrimination action. See *Mazurkiewicz v. N.Y. City Health & Hosps. Corp., 585 F. Supp. 2d 491 (S.D.N.Y. 2008)* (Mazurkiewicz I). The present case was filed after Judge McMahon's opinion and before the Second Circuit affirmed her in a summary order. Familiarity with Judge McMahon's opinion is presumed.

I. Mazurkiewicz's Termination & Reinstatement at HHC

Mazurkiewicz was employed by HHC as a Hospital Care Investigator in the In-Patient Revenue Investigations Department at Bellevue. (Complaint dated June 30, 2009 ("Compl.") ¶¶ 35, 39.) Santos, Aldrich, Simmons, Boyd, Leconte, Barnes, and Anderson each held supervisory positions at Bellevue during the relevant time period. (Compl. ¶¶ 49-55.) In June 2004, Mazurkiewicz [*3] arranged with the family of a psychiatric patient at Bellevue to accompany the patient on a trip to Poland. (Compl. ¶ 87.) Aldrich, Santos, and Simmons intervened and canceled Mazurkiewicz's planned participation in the trip. (Compl. ¶ 87.)

On July 21, 2004, HHC served Mazurkiewicz with a Notice and Statement of Charges alleging that he misre-

presented himself to the psychiatry department by requesting leave to act as a transporter without authorization. (Compl. ¶ 93.) A disciplinary hearing was held in August 2004. The hearing officer recommended Mazurkiewicz's termination. (Compl. ¶¶ 94-95.)

On November 16, 2004, that decision was reviewed in a "Step II" hearing, and the review officer found Mazurkiewicz guilty of conduct unbecoming a hospital employee. On February 18, 2005, Mazurkiewicz was terminated. (Compl. ¶ 96.) On July 26, 2005, an administrative law judge found that the charges against Mazurkiewicz had not been sufficiently substantiated. (Compl. ¶ 98A.) More than two years later, Mazurkiewicz and HHC entered into a Stipulation of Settlement. (Compl. ¶ 100.) Mazurkiewicz returned to work at HHC on February 4, 2008. (Compl. ¶ 101.)

## II. The First Lawsuit

Ten days after Mazurkiewicz [*4] returned to work, he filed a federal employment discrimination action in this District against HHC, Bellevue, Santos, Aldrich, and Simmons. (Complaint, Mazurkiewicz I, No. 08 Civ. 1567 (CM) (S.D.N.Y. Feb. 14, 2008) Docket No. 1.) His claims stemmed from events leading up to his termination in 2005 and the circumstances surrounding the Stipulation of Settlement. On October 30, 2008, Judge McMahon dismissed Mazurkiewicz's Title VII claims for failure to exhaust administrative remedies because he failed to file his EEOC charge within 300 days of his termination. Mazurkiewicz I, 585 F. Supp. 2d at 496-98. Judge McMahon also concluded that Mazurkiewicz's settlement with HHC and his release of all claims relating to his termination were enforceable. Mazurkiewicz I, 585 F. Supp. 2d at 498-500. On December 16, 2009, the Court of Appeals summarily affirmed Judge McMahon's dismissal of the action. Mazurkiewicz v. N.Y. City Health & Hosps. Corp., 356 F. App'x 521 (2d Cir. 2009).

## III. The Current Lawsuit

Mazurkiewicz's second federal action recapitulates all of his prior history at Bellevue with the aborted trip to Poland and then focuses on his tenure at Bellevue after he was reinstated in February [*5] 2008. When he returned to work, Mazurkiewicz's workspace had been reassigned to another employee. (Compl. ¶ 111.) Mazurkiewicz alleges that he was relocated frequently—sometimes twice per week and elsewhere in his Complaint four times per day—and that his personal belongings were moved from one office to another without his consent. (Compl. ¶¶ 113, 116, 120.) Mazurkiewicz also claims that he was denied access to computer and telephone systems and that his performance was monitored more frequently than that of his coworkers. (Compl. ¶¶ 121, 124-25.)

Mazurkiewicz also alleges a litany of other complaints: (1) Barnes and Laconte refused to approve leave for medical and family reasons in 2009 (Compl. ¶¶ 115, 126-28); (2) Anderson and Leconte reprimanded him for using improper English in an email (Compl. ¶ 118-19); (3) Barnes and Anderson improperly initiated disciplinary hearings against him (Compl. ¶ 123); and (4) he was threatened with termination if he filed an EEOC complaint, though he declines to provide any specifics (Compl. ¶ 117).

Mazurkiewicz filed this action on June 30, 2009.

## DISCUSSION

### I. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) [*6] is governed by the same standard as a Rule 12(b)(6) motion to dismiss. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). The Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiffs favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]").

Pro se complaints are to be liberally construed, such that courts "apply[] a more flexible standard to evaluate their sufficiency." Lerman v. Board of Elections, 232 F.3d 135, 140 (2d Cir. 2000). This is especially true where the plaintiff alleges a civil rights violation. Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir 2003). Nevertheless, the Court need not accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

### II. [*7] Res Judicata

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." St Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (internal quotations and citation omitted). A subsequent action is barred where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and]

(3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marvel Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000); *see also Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002). Each of these elements is met in this action. First, Judge McMahon's dismissal of Mazurkiewicz's first employment discrimination action "constitutes entry of judgment and operates as an adjudication on the merits." *Rosenthal A.G. v. Rosenthal, No. 96 Civ. 8093 (WK), 1998 U.S. Dist. LEXIS 23553, 1998 WL 698275, at *2 (S.D.N.Y. Oct. 7, 1998).* Second, Mazurkiewicz is the plaintiff in both actions. *Monahan, 214 F.3d at 285.*

Finally, all Mazurkiewicz's claims in [*8] this action arising out of events that occurred prior to February 14, 2008, the date Mazurkiewicz commenced the first action, could have been raised in that action. "Whether a claim that was not raised in the previous action could have been raised therein depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). The majority of Mazurkiewicz's Complaint in this action sets forth identical allegations to those brought in his earlier complaint--namely, that Defendants created a hostile work environment prior to his termination, that HHC deprived him of career opportunities, that Defendants made false statements about him in an online database, that his termination in 2005 was improper, and that the release provision in the settlement is unenforceable. Compare Defendants' Answer dated Oct. 26, 2009 Ex. 1: Complaint in Mazurkiewicz I, No. 08 Civ. 1567 (CM) (S.D.N.Y. Feb. 14, 2008) ¶¶ 17, 29, 31, 50-51, 70, 75, with Compl. ¶¶ 37, 62, 79, 80, 102. Mazurkiewicz concedes that "the same evidence is needed to support both claims." (Pl.'s Opp'n [*9] Mem. at 13.) Accordingly, all claims arising from events that occurred before February 14, 2008 are dismissed.

## III. Section 1986 Claims

"*Section 1986* provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in *section 1985* are about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal quotation marks and citation omitted). "Hence, a § 1986 claim is contingent on a valid § 1985 claim." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). Because Mazurkiewicz does not allege a claim under *Section 1985*, his claims under *Section 1986* are dismissed.

## IV. Section 1981 Claims

*Section 1981* solely prohibits discrimination on the basis of race and does not apply to gender, religion, national origin, or age discrimination. See *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998). To state a claim under *Section 1981*, a plaintiff must allege that "(1) [he] is a member of a racial minority; (2) [defendants had] an intent to discriminate on the basis of race . . . ; and (3) the discrimination concerned one or more of the activities [*10] enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian, 7 F.3d at 1087.* Mazurkiewicz does not allege that he is a member of a racial minority group. Further, while the Second Circuit has found that white individuals have standing to sue under *Section 1981* where they act to vindicate the *Section 1981* rights of a racial minority group, see *DeMatteis v. Eastman Kodak Co.*, 511 F.3d 306, 312 (2d Cir. 1975), there is no such allegation here. Accordingly, Mazurkiewicz's claims under *Section 1981* are dismissed.

## V. Title VII Claims

### A. Race & National Origin Discrimination

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1).* To establish a prima facie case of discrimination, a plaintiff bears the burden of establishing that: "(i) he is a [*11] member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of [] discrimination." *LaPorte v. Greenwich House, No. 09 Civ. 6645 (NRB), 2010 U.S. Dist. LEXIS 42326, 2010 WL 1779342, at *4 (S.D.N.Y. Apr. 26, 2010).* While a plaintiff need not plead the specific facts necessary to establish a prima facie case, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 2010 U.S. Dist. LEXIS 21082, 2010 WL 768888, at *3 (S.D.N.Y. Mar. 8, 2010);* see also *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).*

Despite running nearly two hundred paragraphs, Mazurkiewicz's Complaint fails to meet this modest standard. The Complaint is bereft of any allegations regarding Mazurkiewicz's race or the race of his supervisors, or that he was treated differently than employees of other races. Mazurkiewicz also fails to allege any facts showing racial animus on the part of his supervisors and co-workers.

While Mazurkiewicz sets forth his national origin--Polish--he fails to identify the national origin of any of his [*12] supervisors. Moreover, although Mazurkiewicz alleges that he "is treated unequally and differently from other employees," he does not specify the national origin of other employees or put forward facts indicating that any alleged actions by Defendants were motivated by animus towards his national origin. Even assuming the alleged conduct rises to the level of an adverse employment action, Mazurkiewicz fails to plead that his supervisors' actions were connected to his race, color, or national origin. *LaPorte, 2010 U.S. Dist. LEXIS 42326, 2010 WL 1779342, at *4; Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316 (HB), 2008 U.S. Dist. LEXIS 62867, 2008 WL 3861352, at *5 (S.D.N.Y. Aug. 19, 2008)* (internal citations and quotation marks omitted). Accordingly, Mazurkiewicz's Title VII discrimination claims must be dismissed.

### B. Retaliation

To prevail on a Title VII retaliation claim, a plaintiff must show (1) he engaged in a protected activity; (2) the employer knew about the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. See *Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).*

Mazurkiewicz fails to allege a causal connection [*13] between his supervisors' actions and any protected activity. The Complaint does not allege any facts linking Defendants' alleged adverse employment actions to Mazurkiewicz's EEOC filing. Moreover, there is no close temporal connection. For a causal connection to be inferred from temporal proximity, the connection must be "very close." *Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).* "The Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated." *Milne v. Navigant Consulting, No. 08 Civ. 8964 (NRB), 2009 U.S. Dist. LEXIS 112632, 2009 WL 4437412, at *8 (S.D.N.Y. Nov. 30, 2009); Hussein v. Hotel Emps. & Rest. Union, Local 6, 108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000)* ("the passage of more than two months defeats any retaliatory nexus"); *Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998)* (two and-a-half months is "hardly the close proximity of time contemplated . . . for allowing a plaintiff to establish the 'causal connection' element of [a] retaliation claim").

Because Mazurkiewicz does not specify when many of the adverse employment actions occurred, [*14] he cannot allege temporal proximity. "Events that took place prior to the filing of the Complaint cannot be in retaliation for an event that had not occurred." *Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 363 n.29 (S.D.N.Y. 2006).* Accordingly, any retaliation could only have been in response to Mazurkiewicz's first EEOC complaint--filed some time prior to commencing his first lawsuit--or in response to his first lawsuit filed February 14, 2008. The allegedly retaliatory actions occurred at indeterminate points between February 4, 2008, when Mazurkiewicz was reinstated, and December 16, 2008, when he filed his second EEOC complaint. These allegations do not establish a "very close" temporal connection between the protected activity and the alleged retaliation.

The only alleged adverse actions for which Mazurkiewicz pleads a time frame are the denials of his requests for time off on March 31 and May 15, 2009. However, three and a half months elapsed between Mazurkiewicz's second EEOC filing and the March 31, 2009 denial. This is insufficient to show a causal connection. See *Milne, 2009 U.S. Dist. LEXIS 112632, 2009 WL 4437412, at *8.* Accordingly, Mazurkiewicz's retaliation claim is dismissed.

### C. Hostile Work Environment

While [*15] the Complaint does not specify the statutory basis for Mazurkiewicz's hostile work environment claims, this Court construes them as Title VII claims and state law claims. "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive'that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected category.]" *Patane v. Clark, 508 F.3d 106, 113 (2d Cir 2007).*

In evaluating a hostile work environment claim, courts consider a variety of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).* "[T]he standard for establishing a hostile work environment is high." *Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003).*

Mazurkiewicz [*16] alleges that he was subjected to a hostile work environment because of his race, color, national origin, religion, and gender. While some alleged discriminatory acts, including the frequent relocation of his work space, may collectively satisfy the first two elements of a hostile work environment claim, Mazur-

2010 U.S. Dist. LEXIS 107697, *

kiewicz pleads no facts linking those actions to his race, color, national origin, religion, or gender. Accordingly, Mazurkiewicz's hostile work environment claims are dismissed.

## VI. State Law Claims

Since Mazurkiewicz has failed to plead a viable federal claim, this Court declines to exercise supplemental jurisdiction over his pendent claims. See *28 U.S.C. § 1367; Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998)* ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: September 16, 2010

New York, New York

SO ORDERED:

/s/ William H. Pauley III

WILLIAM H. PAULEY III

U.S.D.J.

 LexisNexis®

ELLEN M. BROWN, Plaintiff-Appellant, v. RESEARCH FOUNDATION OF SU-
NY ONEONTA, MELISSA NICOSIA, JOHN SPARACO, EDMOND OVERBEY,
BRIDGET FISH-GRAVES, BERTHA RADLOFF, Defendants-Appellees. *

\* The Clerk of the Court is respectfully directed to amend the official caption to
conform to the above.

09-2545-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*381 Fed. Appx. 119; 2010 U.S. App. LEXIS 12866*

June 23, 2010, Decided

**NOTICE:** PLEASE REFER TO *FEDERAL RULES
OF APPELLATE PROCEDURE RULE 32.1* GO-
VERNING THE CITATION TO UNPUBLISHED OPI-
NIONS.

**PRIOR HISTORY:** [**1]
Appeal from a judgment of the United States District
Court for the Northern District of New York. (McAvoy,
J.).
*Brown v. Research Found. of SUNY, 2009 U.S. Dist.
LEXIS 45971 (N.D.N.Y, May 28, 2009)*

**COUNSEL:** FOR PLAINTIFF-APPELLANT: ELLEN
M. BROWN, Pro se, Otego, New York.

FOR DEFENDANTS-APPELLEES: PATRICK J.
WALSH, Assistant Solicitor General, for Andrew S.
Cuomo, Attorney General, State of New York, Albany,
New York, for Appellee Nicosia; SANJEEVE K. DE-
SOYZA, Bond, Schoeneck & King, PLLC, Albany, New
York, for Appellees Research Foundation of SUNY
Oneonta, Sparaco, Overbey, Fish-Graves, and Radloff.

**JUDGES:** PRESENT: JOSEPH M. McLAUGHLIN,
GUIDO CALABRESI, DEBRA ANN LIVINGSTON,
Circuit Judges.

**OPINION**

[*119] SUMMARY ORDER

UPON DUE CONSIDERATION, it is hereby OR-
DERED, ADJUDGED, AND DECREED that the judg-

ment of the district court is AFFIRMED. Appellant's
motion to amend the record on appeal is DENIED.

Plaintiff-Appellant Ellen M. Brown, *pro se*, appeals
from a judgment of the United States District Court for
the Northern District of New York (McAvoy, J.) dis-
missing Appellant's employment discrimination com-
plaint, which asserted claims under Title VII of the Civil
Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et
seq.*; the Age Discrimination in Employment Act of 1967
("ADEA"), *29 U.S.C. § 621 et seq.*, [**2] the Ameri-
cans with Disabilities Act of 1990 ("ADA"), *42 U.S.C. §
12112 et seq.*; and *42 U.S.C. § 1983*. We assume the
parties' familiarity with the facts and procedural history
of the case and with the issues presented for review.

We review *de novo* a district court's decision to dis-
miss a complaint for failure to state a claim, taking all
factual allegations in the complaint as true and drawing
all reasonable inferences in favor of the plaintiff. *Cham-
bers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.
2002)*. We review orders granting summary judgment *de
novo* and ask whether the district court properly con-
cluded that there was no genuine [*120] issue as to any
material fact and the moving party was entitled to judg-
ment as a matter of law. *Miller v. Wolpoff & Abramson,
L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)*.

Having conducted an independent and *de novo* re-
view, we conclude, for substantially the same reasons as
the district court, that Appellant failed to timely com-
mence an action in federal court within ninety days after
she was issued a right-to-sue letter by the Equal Em-
ployment Opportunity Commission. *See 42 U.S.C. §*

381 Fed. Appx. 1:9, *; 2010 U.S. App. LEXIS 12866, **

2000e-5(f)(1) (Title VII and ADA claims); 29 U.S.C. § 626(e)(1) (ADEA claims). [**3] We conclude that Appellant did not demonstrate extraordinary circumstances that would merit the application of equitable tolling. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (placing the burden on the plaintiff to demonstrate that equitable tolling should be applied, and noting that vague or conclusory assertions are "insufficient to justify any further inquiry into tolling"); see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) (noting circumstances that would justify equitable tolling and that a plaintiff who fails to act diligently may not invoke tolling).

We further conclude, for substantially the same reasons as the district court, that Appellant was unable to sustain a retaliation claim under § 1983. The record supports the district court's conclusion that Appellant's

speech did not meet the legal definition of a matter of public concern because it was "personal in nature and generally related to [Appellant's] own [work] situation." Huth v. Haslun, 598 F.3d 70, 74 (2d Cir. 2010) (quoting Saulpaugh v. Monroe Cnty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993)) (internal quotation marks omitted). Moreover, Appellant has not adequately shown that her speech was [**4] a motivating factor in her termination. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam).

We have considered Appellant's remaining arguments and find them to be without merit. For the reasons stated above, the judgment of the district court is AFFIRMED. Appellant's motion to amend the record on appeal is DENIED.



BARUCH COLEMAN, Plaintiff, - against - BROKERSXPRESS, LLC, OP-
TIONSXPRESS HOLDINGS, INC, GARY A. MARTINO, BARRY S. METZZER,
HILLARY VICTOR, BLAINE SCHWARTZ, THOMAS E. STERN, and NED W.
BENNETT, Defendants.

08 Civ. 5085 (SAS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2009 U.S. Dist. LEXIS 8329*

**February 4, 2009, Decided
February 4, 2009, Filed**

**SUBSEQUENT HISTORY**: Reconsideration denied by
*Coleman v. brokersXpress, LLC, 2009 U.S. Dist. LEXIS
18478 (S.D.N.Y., Mar. 3, 2009)*
Affirmed by *Coleman v. Brokersxpress, LLC, 2010 U.S.
App. LEXIS 8976 (2d Cir. N.Y., Apr. 30, 2010)*

**PRIOR HISTORY**: *Coleman v. brokersXpress, LLC,
2008 U.S. Dist. LEXIS 92658 (S.D.N.Y., Oct. 30, 2008)*

**COUNSEL**:  [*1] Baruch Coleman, Plaintiff, Pro se,
Closter, NJ.

For Defendants: John P. LoPresti, Esq., New York, NY;
Harris L. Kay, Esq., Henderson & Lyman, Chicago, IL.

**JUDGES**: Shira A. Scheindlin, United States District
Judge.

**OPINION BY**: Shira A. Scheindlin

**OPINION**

**OPINION AND ORDER**

    **SHIRA A. SCHEINDLIN, U.S.D.J.**:

**I. INTRODUCTION**

    Pro se plaintiff Baruch Coleman brings this action
against brokersXpress, LLC ("brokersXpress"), its parent
company    optionsXpress   Holdings,   Inc.   ("op-
tionsXpress"), and various individual employees of these

entities, claiming violations of his rights under both fed-
eral and state law. Specifically, Coleman asserts in his
Amended Complaint that brokersXpress terminated its
employment relationship with him because of his reli-
gion and retaliated against him for engaging in "pro-
tected activities." [1] Defendants move to dismiss Cole-
man's Amended Complaint for failure to state a claim
pursuant to *Rule 12(b)(6) of the Federal Rules of Civil
Procedure*. For the reasons stated below, defendants'
motion is granted.

    1    Amended Complaint ("Compl.") P 10.

**II. BACKGROUND**

    In February 2007, Coleman commenced employ-
ment as a securities broker with brokersXpress, [2] a regis-
tered securities broker-dealer. [3] Prior to February 2007,
[*2] Coleman had been similarly employed by Synergy
Investment Group, LLC. [4] In a March 15, 2007 disclo-
sure to the Financial Industry Regulatory Authority
("FINRA") regarding the termination of Coleman's em-
ployment, Synergy described a complaint against Cole-
man by a customer named Brain. [5] According to the dis-
closure, Brain's complaint against Coleman sought $
100,000 in compensatory damages. [6] Yet according to
Coleman, Brain transferred her account from Synergy to
brokersXpress and continued to use Coleman as her in-
vestment advisor after the alleged complaint was filed. [7]

    2    *See id* P 15.

3    *See* Memorandum in Support of Defendants'
Motion to Dismiss Amended Complaint ("Def.
Mem.") at 1.
4    *See* Compl. P 22.
5    *See id.* P 30.
6    *See id.*
7    *See id.* P 32.

As a result of the March 15, 2007 disclosure by
Synergy, FINRA initiated an investigation into the Brain
complaint. [4] FINRA sent Coleman several letters con-
taining requests for documents and other information. [5]
BrokersXpress received copies of these letters and de-
fendant Blaine Schwartz, an officer of brokersXpress,
helped Coleman respond to the first three letters. [6] Dur-
ing Rosh Hashanah, the Jewish New Year, bro-
kersXpress received a fourth letter from FINRA  [*3]
dated September 12, 2007. [7] When Coleman returned to
work on Monday following the holiday and the weekend,
he was informed that he had been terminated. [8] He al-
leges that defendants made this decision during Rosh
Hashanah, [9] which lasted from nightfall on September
12 (Wednesday) to nightfall on September 14 (Friday).
Coleman further alleges that his termination resulted
from his inability to respond to the September 12, 2007
FINRA letter while observing the Jewish holiday. [10]

8    *See id.* P 35.
9    *See id.* PP 36, 39.
10   *See id.*
11   *See id.* P 39.
12   *See id.* P43.
13   *See id.* PP 39-40.
14   *See id.* P 40.

Coleman alleges that he subsequently called defen-
dant Barry S. Metzger, [11] an officer of brokersXpress,
who promised to reinstate him if he responded to the
September 12, 2007 FINRA letter and an earlier letter
from FINRA by September 21, 2007 (Friday). [12] Cole-
man timely responded to both letters. [13] Just before the
beginning of the Yom Kippur holiday, at 4:30 p.m. on
Friday, September 21, 2007, defendants Hillary Victor
(corporate counsel for optionsXpress), Thomas E. Stern
(an officer of brokersXpress), and Gary A. Martino
(Chief Operating Officer of brokersXpress) notified
Coleman "that he had in fact  [*4] been terminated de-
spite their earlier assurances." [14]

15    The caption of the Amended Complaint
names a Barry S. Meitzer as a defendant, *see id.*
at 1, but then refers to a Metzger, not a Meitzer.
*See, e.g. id.* P 53. Defendants' Memorandum re-
fers to a Metzger but not a Meitzer, as does their
Notice of Motion. *See* Def. Mem., at 1, 12; No-
tice of Motion to Dismiss by Defendants at 1.

16    *See Compl.* PP 56, 58.
17    *See id.* P 59.
18    *Id.* P 61.

Coleman filed an employment discrimination
Charge with the U.S. Equal Employment Opportunity
Commission ("EEOC") on February 4, 2008. [16] Coleman
alleges for the first time in his Amended Complaint that
defendants retaliated against him for filing the EEOC
Charge by adding defamatory information to the Form
U5 it had originally filed some time after February 4,
2008. [17] Although Coleman does not explicitly describe
the original Form U5 or when it was filed, brokersXpress
was required to file this form within thirty days of Cole-
man's termination to comply with FINRA By-Laws. [20]
After Coleman filed the EEOC Charge, brokersXpress
justifiably amended Coleman's Form U5 because the
EEOC Charge precipitated an EEOC investigation. [22]
Moreover, Coleman does not provide the  [*5] content
of the defamatory language added to the Form U5.

19    *See id.* PP 71, 105; Dismissal and Notice of
Rights, Ex. A to Compl.
20    *See id.* FINRA requires its member firms to
complete a Form U5 for terminated employees no
later than thirty days after termination. FINRA
By-Laws, Ex. B to Def. Mem., Sec. 3. A Form
U5 must also be filed when a "former associated
person is the subject of a regulatory investigation,
internal review, regulatory action, or a customer
complaint that concerns 'events that occurred
while the individual was employed by or asso-
ciated with your firm . . . . [and] which alleged
that the individual was involved in one or more
sales practice violations'." Def. Mem. at 10-11;
Form U5, Ex. A to Def. Mem., at 5.
21    FINRA By-Laws, Ex. B to Def. Mem., Sec.
3.
22    *See* Def. Mem. at 10-11; Form U5, Ex. A to
Def. Mem., at 5; Dismissal and Notice of Rights,
Ex. A to Compl. (showing that the EEOC con-
ducted an investigation in response to Coleman's
Charge).

On June 3, 2008, Coleman brought this suit seeking
damages for employment discrimination based on his
religion. The Court dismissed Coleman's original Com-
plaint with leave to replead. [23] In his Amended Com-
plaint, filed November 28, 2008,  [*6] Coleman asserts
that defendants discriminated against him "on the basis
of his religion by . . . failing to accommodate him for his
religious practices" [24] in violation of Title VII of the Civil
Rights Act of 1964 ("Title VII") and New York State and
City law. He also claims that defendants violated Title
VII and New York State and City law by retaliating
against him "after he filed a charge with the EEOC." [25]

23    *See Coleman v. brokersXpress LLC, No. 08 Civ. 5985, 2008 U.S. Dist. LEXIS 92658, 2008 WL 4778675, at \*4 (S.D.N.Y Oct. 31, 2008).*

24    *Compl.* P 99.

25    *Id.* P 105.

## III. LEGAL STANDARD

In reviewing a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, a court must "accept as true all of the factual allegations contained in the complaint" [25] and "draw all reasonable inferences in the plaintiff's favor." [27] Moreover, as Coleman is appearing pro se, this Court will "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest [s]." [28]

26    *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007)* (quoting *Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).*

27    *Ofori-Tenkorang v. American Int'l Group, Inc., 460 F.3d 296, 298 (2d Cir. 2006).*

28    *Weixel v. Board of Educ. of New York, 287 F.3d 138, 146 (2d Cir. 2002)* [*7] (quoting *Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).*

Before the Supreme Court decided *Bell Atlantic v. Twombly*, courts generally granted motions to dismiss under *Rule 12(b)(6)* when it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [29] In *Twombly*, however, the Court abandoned the *Conley* standard. [30] Rather, a complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'" [31] in order to survive a motion to dismiss. Although the complaint need not provide "detailed factual allegations," [32] it must nonetheless "amplify a claim with some factual allegations . . . to render the claim *plausible*." [33] "[B]ald assertions and conclusions of law will not suffice." [34]

29    *Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).*

30    *See Twombly, 127 S. Ct. at 1969.*

31    *ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)* (quoting *Twombly, 127 S. Ct. at 1965). Accord Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)* (per [*8] curiam) (noting that plaintiffs must "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests") (quoting *Twombly, 127 S. Ct. at 1955).*

32    *Twombly, 127 S. Ct. at 1970.*

33    *Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)* (emphasis in original).

34    *Law Offices of Curtis V. Trinko, LLP v. Bell Atl. Corp., 309 F.3d 71, 74 (2d Cir. 2002)* (citation omitted).

## IV. DISCUSSION

### A. Count I: Title VII Discrimination Claim

Title VII makes employers liable for employment discrimination based on "race, color, religion, sex, or national origin." [35] While Coleman asserts that brokersXpress discharged him because of his religion in violation of Title VII, he fails to plead any facts suggesting that his discharge was tied to his religion in any way.

35    *Richardson v. Commission on Human Rights and Opportunities, 532 F.3d 114, 119 (2d Cir. 2008)* (quoting *42 U.S.C. § 2000e-2(a)).*

In his Amended Complaint, Coleman asserts that defendants decided to terminate him during one Jewish holiday, Rosh Hashana, [36] and that he was notified that he had in fact been terminated during another Jewish holiday, Yom Kippur. [37] He also asserts that defendants "punished him for observing the [*9] Jewish holiday [Rosh Hashana] when he was unable to respond to the [September 12, 2007 FINRA] letter." [38] He alleges that he was discriminated against "because of his religion" [39] and "on the basis of his religion." [40] Yet these are merely conclusory statements. "Put simply, Coleman alleges little more than that he is Jewish[] and that he was terminated." [41] There are no facts in his Amended Complaint from which the Court can infer that Coleman was dismissed because of his religion. Because Coleman offers only conclusory statements in support of his Title VII discrimination claim, that claim is dismissed.

36    *See Compl.* P 40.

37    *See id.* P 61.

38    *Id.* P 40.

39    *Id.* P 97.

40    *Id.* P 99.

41    *Coleman, 2008 U.S. Dist. LEXIS 92658, 2008 WL 4778675, at \*4* (quoting Defendants' Memorandum in Support of Defendants' Motion to Dismiss [original complaint] at 4).

### B. Count II: Title VII Retaliation

Coleman also asserts that brokersXpress and the other defendants violated *section 2000e-3(a) of Title 42 of the United States Code*, which prohibits an employer

from discriminating against any employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter . . . ." [*10] [42] In support of this claim, Coleman alleges for the first time in his Amended Complaint that defendants retaliated against him for filing a discrimination Charge with the EEOC by amending his Form 115 to add defamatory information. [43]

    42   42 U.S.C. § 2000e-3(a).

    43   See Compl. P 70.

Coleman's retaliation claim fails for two alternative reasons. First, Coleman filed the EEOC Charge after his termination. "Accordingly, brokersXpress could not have retaliated against Coleman for contacting the EEOC." [44] Second, under Twombly, a plaintiff must offer some factual support for his allegations in order to survive a motion to dismiss. [45] Although the complaint need not provide "detailed factual allegations," [46] it must nonetheless "amplify a claim with some factual allegations . . . to render the claim plausible." [47]

    44   Coleman, 2008 U.S. Dist. LEXIS 92658, 2008 WL 4778675, at *3.

    45   See Twombly, 127 S. Ct. at 1965.

    46   Id. at 1970.

    47   Iqbal, 490 F.3d at 157-58 (emphasis in original).

Coleman has failed to amplify his claim with any allegations from which a court could determine that a claim of retaliation based on the filing of an amended Form C5 is plausible. Thus, the retaliation claim is dismissed.

## C. Counts III, V, and VI: State [*11] and City Discrimination Claims

Coleman also alleges that brokersXpress violated New York Executive Law section 296(1)(a) [48] and New York City Administrative Code Title 8, section 8-107, by terminating him on the basis of his religion. He alleges that brokersXpress also violated section 8-107 by forbidding him from observing a religious holiday. According to the Second Circuit, courts should examine claims under these statutes "with the same analytical lens as corresponding Title VII-based claims." [49]

    48   In Count III of his Amended Complaint, Coleman again quoted N.Y. Exec. Law § 296(1)(a), a law regarding discrimination, while citing to N.Y. Exec. Law § 291(1)(a), a law regarding "equality of opportunity." The Court again assumes that Coleman intended to refer to section 296. See Coleman, 2008 U.S. Dist. LEXIS 92658, 2008 WL 4778675, at *3 n.41.

    49   Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000)).

Coleman offers the same conclusory statements in support of his state and city law discrimination claims that are insufficient under Twombly to support his Title VII discrimination claims. Accordingly, Claims III, V, and VI are dismissed.

## D. Counts [*12] IV and VII: State and City Retaliation Claims

In Count IV of his Amended Complaint, Coleman alleges that the defendants violated New York Executive Law section 296(1)(e). [50] In Count VII, Coleman alleges retaliation in violation of section 8-107(7) of Title 8 the New York City Administrative Code. Coleman asserts that brokersXpress and the other defendants violated these laws by "discriminating against Plaintiff on the basis of his religion." [51]

    50   In Count IV of his Amended Complaint Coleman again quotes one law (N.Y. Exec. Law § 296(1)(e)) while citing to another law (N.Y. Exec. Law § 291(1)(e)). The Court again assumes that Coleman intended to refer to section 296. See Coleman, 2008 U.S. Dist. LEXIS 92658, 2008 WL 4778675, at *3 n.46.

    51   Compl. P 116.

Like Title VII, the laws under which Coleman seeks relief in Counts IV and VII are violated only when an employer retaliates against an employee for complaining of employment discrimination. [52] While Coleman alleges retaliation in response to the employment discrimination Charge he filed with the EEOC, [53] as discussed earlier, Coleman filed this Charge after his termination, which precludes a finding of retaliation. Further, the allegation is conclusory. Retaliation [*13] claims must contain some factual allegations in order to survive a motion to dismiss. Because Coleman's state and city claims include no such factual support, they are dismissed.

    52   See N.Y. Exec. Law § 296(1)(e) (providing that it is unlawful for an employer to discriminate against an employee who has "filed a complaint, testified or assisted in any proceeding under this article") (emphasis supplied); 8 N.Y. Admin. Code § 8-107(7) (making it unlawful for an employer to retaliate against an employee who "filed a complaint, testified or assisted in any proceeding under this chapter") (emphasis supplied).

    53   See Compl. P 105.

## V. CONCLUSION

2009 U.S. Dist. LEXIS 8329, *

For the foregoing reasons, defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this case and this motion (Document # 9).

SO ORDERED:

/s/ Shira A. Scheindlin

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York

February 4, 2009



CATHY MITCHELL, Plaintiff, - against - PROJECT RENEWAL, Defendants.

09 Civ. 1958 (CM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2010 U.S. Dist. LEXIS 8323*

January 29, 2010, Decided
January 29, 2010, Filed

COUNSEL: [*1] Cathy Mitchell, Plaintiff, Pro se, Brooklyn, NY.

For Project Renewal, Defendant: Allison C. Spivak, Richard Ian Greenberg, LEAD ATTORNEYS, Jackson Lewis LLP, New York, NY.

JUDGES: Colleen McMahon, UNITED STATES DISTRICT JUDGE.

OPINION BY: Colleen McMahon

OPINION

*DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FACTS*

Plaintiff Cathy Mitchell was an employee of Project Renewal, who was terminated at some point before November 2008 (her complaint references no specific date). (Compl. at 2.)

Plaintiff filed a complaint with the New York State Division of Human Rights (the "DHR") on January 22, 2008, alleging racial discrimination in connection with her termination. The DHR rendered a determination of "no probable cause" on May 30, 2008. Plaintiff then filed an appeal of the DHR determination with the Equal Employment Opportunity Commission ("EEOC"), which issued a "right to sue" letter on August 8, 2008.

She filed a complaint in this Court with the Pro Se Office in November 2008. The complaint alleges violations of Title VII, the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA).

In her pleading, Ms. Mitchell states that: "I believe because I was African American she [plaintiff's [*2] supervisor] felt like I wasn't good enough to be a supervisor." (Compl. Attachment.) She further states that her supervisor "began to my [sic] up lies about my job performance, saying I was not carrying out my duties." (*Id.*) Presumably as an example, she provides the following story: "a staff came to me reporting that the night supervisor was drinking. I had been made Ms. Bower [plaintiff's supervisor] aware of it. When the staff told me all I said was I know." (*Id.*) Finally, she explains: "I don't know what Ms. Bower call [sic] her supervisor and told her but I was terminated. After being there for 8 yrs never been written up for anything." (*Id.*)

Plaintiff has twice been granted extensions to file an amended complaint. First, on May 8, 2009, plaintiff was granted until May 15, 2009, to amend her complaint. Then, on December 9, 2009, plaintiff sought and was granted a second extension to file her amended complaint, giving her until January 15, 2010. As of today, plaintiff has not amended her original complaint, and has not asked the Court for any additional extensions of time to file an amended complaint.

For the reasons set forth below, defendant's motion to dismiss, which has been [*3] pending since June 2009, is granted.

*DISCUSSION*

I. Legal Standard

A. Subject-Matter Jurisdiction

Case 1:11-cv-04567-SAS   Document 6-1   Filed 07/12/11   Page 21 of 54

Page 2
2010 U.S. Dist. LEXIS 8323, *

As a threshold matter, a plaintiff may only assert a Title VII, ADEA or ADA claim in federal court if she has first filed a timely administrative charge of discrimination with the EEOC or with an appropriate state or local administrative agency. 42 U.S.C. §§ 2000e, 12117(a)29 U.S.C. §§ 626(d)(2), 633(b); see generally Stewart v. U.S. Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985); Floyd v. Lord & Taylor, 96 F. App'x 792 (2d Cir. 2004). An administrative charge is timely if it is filed within 300 days of the alleged discriminatory act. Id. at 793.

In this case, plaintiff altogether failed to bring age or disability-related claims (under the ADA or ADEA) in her complaint filed with the DHR (and appealed to the EEOC). Therefore, this Court lacks subject matter jurisdiction over these claims because plaintiff has failed to exhaust administrative remedies with respect to the ADA and ADEA claims. Moreover, since it has now been more than 300 days since the alleged discriminatory act, which took place more than a year ago, plaintiff is also barred from pursuing those claims [*4] at the administrative level.

However, since plaintiff did exhaust administrative remedies with respect to her race discrimination claim, this Court evaluates her Title VII allegations to determine whether she has validly stated a claim sufficient to defeat defendant's 12(b)(6) motion.

**B. Pleading Standard**

In deciding a motion to dismiss pursuant to *Rule 12(b)(6)*, the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. (citing Twombly, 550 U.S. at 556").* "While a complaint attacked by a Rule 12(b)(6) motion [*5] to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555* (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id. at 570; Iqbal, 129 S. Ct. at 1950 51.*

Despite this recent tightening of the standard for pleading a claim, complaints by pro se parties continue to be accorded more deference than those filed by attorneys. *Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081(2007).* So *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests. *Weixel v. Bd. of Educ., 287 F. 3d 138, 146 (2d Cir. 2002).*

As a threshold matter, there is a dispute in this case regarding whether the plaintiff is proceeding pro se or has retained counsel. It is clear that she filed her original complaint pro se. However, at some [*6] point during the proceedings she retained counsel, since she was represented by counsel at a status conference before this Court. However, in her response to defendant's motion to dismiss, plaintiff now states that she is no longer represented by counsel, and has not been represented by counsel since October 28, 2009. (*See* Mitchell MTD Opp. at 2 n.1 (S.D.N.Y. Nov. 4, 2009).) The Court did not relieve counsel.

Whether or not she is represented by counsel is relevant to only one question--the standard of review used to test the sufficiency of her complaint. Pro se pleadings must be interpreted "to raise the strongest argument that they suggest." *Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006).* Because plaintiffs complaint fails to meet even the liberal standard afforded to pro se pleadings, whether or not she is still represented by counsel does not bear upon the 12(b)(6) motion currently pending before this Court.

**II. Title VII Claim**

Plaintiff attempts to state a cause of action under Title VII for employment discrimination based upon race. To state a cause of action thereunder, a plaintiff must set forth facts demonstrating that (1) she is a member of a protected class; (2) she satisfactorily [*7] performed her job; (3) she was subjected to adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class. *Dawson v. Bumble & Bumble, 398 F.3d 211, 216 n.2 (2d Cir. 2005).* With regard to the fourth prong, a plaintiff must allege that an adverse employment action was taken against her because of discriminatory animus on the part of her employer. *Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999).*

In this case, the facts plaintiff has alleged are insufficient to give rise to an inference of discrimination based on her membership in a protected class. With respect to race, plaintiff has provided a single conclusory allegation: "I believe because I was African American, [plaintiff's supervisor] felt like I wasn't good enough to be a supervisor." This is the only race-related statement plaintiff has included in her complaint, and she fails to provide any basis for her belief. Further, to the extent that the termination of her employment could be considered to have been "retaliatory" at all, the facts plaintiff has alleged--at most--suggest that her employment was terminated because  [*8] she reported a co-worker for drinking on the job. Even if true, this is not the type of retaliatory action prohibited by Title VII because it has no apparent relationship to plaintiff's race or any racial animus demonstrated by her employer. Accordingly,

plaintiff has failed to plead facts sufficient to allow this Court to conclude that any adverse action taken against her could have been based upon racial discrimination, and her complaint must be dismissed.

## CONCLUSION

The motion to dismiss (docket no. 6) is granted. The Clerk of the Court is instructed to remove the motion at docket no. 6 from the Court's outstanding motion list and to close the case.

Dated: January 29, 2010

/s/ Colleen McMahon

U.S.D.J.

BY MAIL TO ALL PARTIES



ALICIA HOPPER, Plaintiff, -against- BANANA REPUBLIC, LLC, et al., Defendants.

07 Civ. 8526 (WHP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2008 U.S. Dist. LEXIS 13503*

February 25, 2008, Decided
February 25, 2008, Filed

COUNSEL: [*1] For Plaintiff: Derek T. Smith, Esq., Akin & Smith, LLC, New York, NY.

For Defendants: Robert S. Whitman, Esq., Seyfarth Shaw LLP, New York, NY.

JUDGES: WILLIAM H. PAULEY III, U.S.D.J.

OPINION BY: WILLIAM H. PAULEY III

OPINION

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Alicia Hopper ("Hopper") brings this action against Defendants Banana Republic, LLC, Banana Republic, Inc. and The Gap Inc. asserting that Defendants' employee sexually harassed her. Hopper alleges separate claims for negligent hiring and negligent infliction of emotional distress, four claims of discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), and one claim of respondeat superior liability under NYCHRL. Defendants removed the action from the New York state court on diversity grounds, and now move to dismiss the all of the claims pursuant to *Fed. R. Civ. P. 12(b)(6)*. Alternatively, Defendants seek summary judgment on Hopper's discrimination claims. For the following reasons, Hopper's negligence and respondeat superior claims are dismissed for failure to state claims, and Defendants' motion for summary judgment dismissing the discrimination claims is granted. [*2]

BACKGROUND

For the purposes of the *Rule 12(b)(6)* motion, the Court accepts the following allegations as true. On July 10, 2007, Hopper was "sexually harassed, assaulted and battered" by an employee ("Portella") of Defendants' store at 2360 Broadway (the "Store"). (Complaint dated Aug. 17, 2007 ("Compl.") PP 26, 28.) Hopper, an "independent auditor" hired by Defendants, was auditing merchandise in the Store's stock room when Portella "rubbed his groin and body against [Hopper's] buttocks." (Compl. P 29.) Portella continued this offensive conduct despite Hopper's protests. (Compl. P 30.) Hopper complained to another employee at the Store about Portella's actions. (Compl. PP 31-33.)

DISCUSSION

I. Legal Standard

A. Motion to Dismiss

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[i]n order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)). [*3] "[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly, 127 S. Ct. at 1964-65* (citations omitted).

## B. Summary Judgment

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).* However, a court may treat a motion to dismiss as a motion for summary judgment and consider matters outside the pleadings if all parties have been given "a reasonable opportunity to present all the material that is pertinent to the motion." *Fed. R. Civ. P. 12(d).* "The essential inquiry . . . is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990)* [*4] (quoting *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs., 850 F.2d 904, 911 (2d Cir. 1988).)* Where a defendant's affidavits are submitted at the same time as its motion, the affidavits are quoted extensively in the defendant's brief, and the motion is entitled "motion to dismiss or, in the alternative, for summary judgment," notice to the plaintiff is inferred. *Ayerst Labs., 850 F.2d at 911.* A plaintiff who is represented by counsel is particularly ill-suited to claim surprise by the defendant's motion for summary judgment. *Ayerst Labs., 850 F.2d at 911.*

Defendants submitted simultaneously with their motion an agreement between Hopper's employer, RGIS LLC, and The Gap Inc., under which Hopper performed the auditing services for Defendants. (Declaration of Jeremi L. Chylinski dated Nov. 30, 2007 ("Chylinski Decl.") Ex. A: Inventory Services Agreement dated Feb. 1, 2007 (the "RGIS Agreement").) Defendants titled their motion "Notice of Motion to Dismiss the Complaint, or in the Alternative for Summary Judgment." (Defendants' Notice of Motion dated Nov. 30, 2007 at 1.) In addition, Hopper has been represented by counsel throughout this litigation. Defendants cite the RGIS Agreement several [*5] times in their brief, but only to support the dismissal of the four employment discrimination claims under NYSHRL and NYCHRL. (Defendants' Brief dated Nov. 30, 2007 ("Def. Br.") at 5-6.) Accordingly, Hopper was on notice that Defendants were moving for summary judgment on the four discrimination claims. The Court will treat the Defendants' motion to dismiss the four discrimination claims as one for summary judgment.

## II. Negligence Claims

## A. Negligent Hiring and Retaining

"[A] necessary element of [negligent hiring, retention or supervision claims] is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 654 N.Y.S.2d 791, (N.Y. App. Div. 1997).* The complaint alleges that Portella "lacked the experience, deportment," "ability," "mental capacity," "maturity, sensibility and intelligence" to be employed by Defendants, who "failed to investigate [Portella's] background" before they hired him. (Compl. P 40.) However, the complaint does not allege what that background was, in what way Portella lacked these positive qualities, or how Defendants should have known about his deficiencies. [*6] Moreover, the complaint alleges that Defendants both "failed to investigate" Portella's background and yet "knew of [Portella's] lack of ability, experience, deportment and maturity . . . when they hired him." (Compl. P 49.) These two statements are inherently contradictory and therefore implausible. Because the complaint includes only speculative and implausible facts concerning Portella's propensities and Defendants' knowledge of them, Defendants' motion to dismiss the negligent hiring claim is granted. See *Twombly, 127 S. Ct. at 1964-65.*

## B. Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress requires that the defendant owe the plaintiff a duty that is "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States, 102 F.3d 693, 693 (2d Cir. 1996).* Moreover, such a claim also "must be supported by proof of conduct by a defendant that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dzik v. Bach Farms, LLC, 34 A.D.3d 1212, 1213, 825 N.Y.S.2d 852 (N.Y. App. Div. 2006).* Hopper [*7] does not allege Defendants owed Hopper any specific duty. Further, Defendants' failure to properly investigate Portella's background before hiring him is not outrageous in character. Therefore, Hopper's negligent infliction of emotional distress claim is dismissed as well.

## III. Respondeat Superior Liability

Under NYCHRL, an employer is liable for the discriminatory acts of its employees if the employer (1) knew about the employee's conduct and failed to take immediate corrective action, or (2) should have known of the employee's conduct and failed to exercise due diligence to prevent it. *N.Y.C. Admin. Code § 8-107(13).* The complaint alleges that Hopper told an "employee" at the Store, about the harassment. (Compl. PP 31-32.)

However, the complaint fails to assert that the employee was in a position to stop Portella and did not.

Hopper submitted an affidavit stating that "one of the defendant's managers . . . witnessed it. She did not do anything to stop the defendant's employee Portella other that [sic] coming to me and asking, 'if I was okay' after everything was over." (Hopper Aff. P 8.) However, on a motion to dismiss, the Court cannot consider these additional facts. Accordingly, [*8] the respondeat superior claim is dismissed.

IV. Employment Discrimination Claims

A. Discrimination

Hopper claims gender discrimination under NYSHRL (Compl. PP 55-58), which creates a cause of action for an employer's discriminatory conduct toward its employee. N.Y. Exec. Law § 296(1)(a). "[NYSHRL] cover[s] 'employees,' not independent contractors," as the common law defines those terms. Eisenberg v. Advance Relocation & Storage, Inc. 237 F.3d 111, 113 (2d Cir. 2000). Whether a hire is a common-law employee or independent contractor depends on factors including, inter alia, the hiring party's right to control the work, whether the hiring party provides the hired party's benefits, the duration of the parties' relationship, and how payment is made. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989); Eisenberg, 237 F.3d at 113-14. The complaint alleges Hopper was working as an "independent auditor." (Compl. P 28.) According to the RGIS Agreement, "the parties intend that an independent contractor relationship shall be created." (Chylinski Decl. Ex. A at 1.) Hopper's work was "under the sole control of RGIS" and Hopper's wages, benefits and training costs were entirely paid by [*9] RGIS. (Chylinski Decl. Ex. A at 1.) The RGIS Agreement was to last for two years. (Chylinski Decl. Ex. A at 1.) Accordingly, Hopper was an independent contractor, and Defendants' motion for summary judgment on the NYSHRL claim is granted.

Hopper brings another claim of employment discrimination pursuant to NYCHRL. (Compl. PP 62-65.) NYCHRL also excludes independent contractors from protection. N.Y.C. Admin. Code § 8-107(1). Although NYCHRL makes an exception for independent contrac-

tors who are "natural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise who are not themselves employers," § 8-102(5), this provision does not apply to independent contractors employed by corporations, O'Neill v. Atl. Security Guards, Inc, 250 A.D.2d 493, 493, 671 N.Y.S.2d 976 (N.Y. App. Div. 1998). Hopper worked at the Store through her employment at RGIS LLC. Accordingly, the natural person exception under NYCHRL does not apply, and Hopper's NYCHRL claim is dismissed.

B. Aiding and Abetting

NYSHRL and NYCHRL both make it unlawful "[f]or any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so." [*10] N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). If summary judgment is granted on a claim, there can be no secondary liability based on that claim. Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 314, 819 N.E.2d 998, 786 N.Y.S.2d 382 (N.Y. 2004). Since summary judgment for Defendants is granted on Hopper's underlying city and state discrimination claims, Defendants' motion for summary judgment is also granted on the aiding and abetting claims.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing Hopper's discrimination claims under NYSHRL and NYCHRL is granted. Defendants' motion to dismiss Hopper's negligence claims and respondeat superior claim pursuant to Rule 12(b)(6) is also granted. The Clerk of the Court is directed to mark the case closed.

Dated: February 25, 2008

New York, New York

SO ORDERED:

/s/ WILLIAM H. PAULEY III

WILLIAM H. PAULEY III

U.S.D.J.



GOROKHOVSKY, Plaintiff, v. CITY OF NEW YORK, et al., Defendants.

10 Civ. 8848 (LBS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2011 U.S. Dist. LEXIS 54947*

**May 18, 2011, Decided
May 19, 2011, Filed**

**COUNSEL:** [*1] For Lyudvig Gorokhovsky, Plaintiff: Linda M Cronin, LEAD ATTORNEY, Dominick Peter Revellino, Rocco G Avallone, Cronin & Byczek, LLP, Lake Success, NY.

For New York City Housing Authority, (HHH) Efraim Diaz, in his official capacity, (HHH) Efraim Diaz, in his personal capacity, Jeffrey Otero, Isaac Holmes Houses Supervisor, Dawn Pinnock, in his official capacity, Dawn Pinnock, in his personal Capacity, Gisela Paulino, New York City Housing Authority Caretaker, sued in her official capacity, Gisela Paulino, New York City Housing Authority Caretaker, sued in her personal capacity, Defendants: Samuel Veytsman, LEAD ATTORNEY, Donna Marie Murphy, New York City Housing Authority, New York, NY.

For Manager of Isaac Holmes Houses, NYCH Director of Human Resources, sued in her official capacity, NYCH Director of Human Resources, sued in her personal capacity, Paul Vitale, New York City Housing Authority Director, sued in his official capacity, Paul Vitale, New York City Housing Authority Director, sued in his personal capacity, William Rodriguez, Sued in his official capacity, William Rodriguez, Sued in his personal capacity, Defendants: Samuel Veytsman, LEAD ATTORNEY, New York City Housing Authority, [*2] New York, NY.

**JUDGES:** Leonard B. Sand, United States District Judge.

**OPINION BY:** Leonard B. Sand

**OPINION**

## MEMORANDUM & ORDER

SAND, J.

Plaintiff Lyudvig Gorokhovsky brings this action pursuant to the *First* and *Fourteenth Amendments of the United States Constitution*, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 ("ADEA"), *New York State Executive Law § 296* ("NYHRL"), *New York City Human Rights Law § 8-107, et seq.* ("NYCHRL"), and *42 U.S.C. §§ 1981, 1983,* and *1985.* Plaintiff alleges that Defendants engaged in employment discrimination based upon Plaintiff's race, national origin, and age, created a hostile work environment, and retaliated against Plaintiff for exercising his *First Amendment* rights. Defendants move to dismiss the Complaint on the merits and on procedural grounds. For the reasons stated below, Defendants' motion is granted in part and denied in part.

> 1    Plaintiff has withdrawn his Constitutional Due Process, Lilly Ledbetter Fair Pay Act, and New York State whistleblowing claims, as well as his claims against the individual Defendants under Title VII and the ADEA.

## I. Background[2]

> 2    The following factual summary is drawn from the Complaint and exhibits submitted to [*3] the Court by the parties.

Plaintiff was born in the Ukraine on November 1, 1940. He identifies himself as a "white male" of "Russian descent." Compl. ¶ 10. Plaintiff has been employed by New York City ("NYC") since 1988 and by Defen-

Case 1:11-cv-04567-SAS   Document 6-1   Filed 07/12/11   Page 27 of 54

Page 2
2011 U.S. Dist. LEXIS 54941, *

dant the New York City Housing Authority ("NYCHA") since 1992 when he was appointed to his current position as a Construction Project Manager II, [2] This is Plaintiff's second Equal Employment Opportunity Commission ("EEOC") complaint against the NYCHA. In 2002, Plaintiff filed a complaint and lawsuit alleging hostile work environment and failure to promote. Summary judgment was granted for all defendants in March 2006. Plaintiff currently seeks $5 million in actual damages and an additional $5 million in punitive and exemplary damages for each claim.

> 3   The position was renamed and redefined throughout the years, but Plaintiff alleges that these changes in title were not promotions. Compl. ¶¶ 21, 22.

Each of the individual Defendants was employed by Defendant NYCHA at all times pertinent to this action. According to Plaintiff, Efraim Diaz was Manager of the NYCHA Isaac Holmes Houses ("IHH"); Jeffrey Otero was a Supervisor; Dawn Pinnock was Director of Human Resources;   [*4] Paul Virale was a Director; Gisela Paulino was a Caretaker; and William Rodriguez was employed in an unspecified capacity.

In the instant action, Plaintiff alleges that Defendants discriminated and retaliated against him in various ways. First, Plaintiff applied for and was denied a promotion to Supervising Construction Project Manager at least 5 times between January 2008 and September 2010, including August 28, 2008, December 16, 2008, August 4, 2009, June 25, 2010, June 29, 2010, and September 10, 2010. Compl. ¶ 31. Plaintiff alleges that he has more experience, qualifications, and seniority than those who received promotions. Furthermore, Plaintiff alleges on information and belief that he is considerably older than the unspecified successful candidates and that none of the successful candidates are of Russian or Ukrainian descent.

Second, Plaintiff alleges that he was asked to "act" as the Construction Project Manager Level III (CPM III) in February 2007 without a salary adjustment "and in an effort to set Plaintiff up to fail," though Plaintiff acknowledges he did not fail. Compl. ¶¶ 24, 29. Since that time, Plaintiff alleges that he has not been paid on an equal basis with his "non-minority,   [*5] younger co-workers for doing the same job description of 'Construction Project Manager," including Brian Fallon and Frances Sanicola. Although Plaintiff was performing level III work, he was not given a raise, while two unspecified "white managers, approximately 20 years younger than Plaintiff," received raises. The relationship between these events is not developed in the Complaint.

Plaintiff also alleges a series of harmful acts that he believes were discriminatorily motivated or taken in retaliation for his complaints of improper conduct. Plaintiff alleges that "he had been asked to fraudulently sign off on incomplete documents and was threatened by Management to sign off on estimates and approve projects improperly and illegally." Compl. ¶ 27. When he brought this to the attention of management at a Labor Management meeting on October 26, 2006, his complaint was "met with extreme hostility and threats of retribution." Compl. ¶ 28. On or about February 2008, Plaintiff alleges that Defendant Diaz "became enraged with Plaintiff when he refused to improperly sign off on a project. Compl. ¶ 34. On April 2, 2008, Plaintiff was falsely accused of an unspecified crime by Defendants Pinnock,   [*6] Diaz, Paulino, Rodriguez, and Otero. As a result, Plaintiff was arrested and suspended without pay. The criminal charges were dismissed on August 4, 2008, but internal disciplinary charges resulted in Plaintiff being found guilty of failure to make a proper notification to the Inspector General's Office. Compl. ¶ 37. Plaintiff has not been repaid for the time he was suspended.

Plaintiff also alleges that he was involuntarily transferred, though he does not provide further factual amplification of this claim. Finally, Plaintiff alleges that he requested training on the "PRIMAVERA" software computer program to help him qualify for a promotion but, because management refused, trained himself on his own time. Compl. ¶ 30. The Complaint does not state when this allegedly occurred.

Plaintiff filed a charge with the EEOC on or about April 23, 2009. In the charge, Plaintiff stated that he had been discriminated against by the NYCHA between August 26, 2008 and December 16, 2008 on the basis of his age and in retaliation for engaging in prior EEOC activity. He stated that he was consistently denied promotions and was passed over for an unspecified "younger, less qualified individual" even though   [*7] he was the most qualified candidate. Veytsman Decl. Ex. A. He stated that he was "sure that my supervisors . . . denied me the position solely because of my age and in retaliation for having filed previous complaints of discrimination." Id. He did not tick the boxes for race, color, national origin, or other discrimination on the EEOC form. On August 25, 2010, the EEOC issued a Right to Sue letter advising Plaintiff of his right to file suit in federal court. Compl. Ex. A.

## II. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to "accept as true all facts alleged in the complaint" and to "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237*

(2d Cir. 2007). "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).* Rather, the pleading requirement is satisfied by "a short and plain statement of the claim." *Fed. R. Civ. P. 8(a)(2),* that "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz, 534 U.S. at 512* [*8] (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).* Nonetheless, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)* (internal quotation marks omitted). Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).* "[A] simple declaration that defendant's conduct violated the ultimate legal standard at issue . . . does not suffice." *Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001).*

### III. Discussion

Defendants move to dismiss the Complaint on the grounds that Plaintiff failed to exhaust administrative remedies, that his claims are time-barred, and that each claim fails on the merits.

### a. Exhaustion of Administrative Remedies

"A plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice." *Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001)* [*9] (quoting *42 U.S.C. § 2000e-5(e))* (Title VII); *29 U.S.C. §§ 626(d), 633(b)* (ADEA). The purpose of this requirement, "which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel., 755 F.2d 20, 26 (2d Cir.), cert. denied, 474 U.S. 851, 106 S. Ct. 148, 88 L. Ed. 2d 122 (1985)* (describing EEOC charge requirement in the ADEA, *29 U.S.C. § 621, et seq.)*; *Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985)* (holding purpose of exhaustion requirement "is to give the administrative agency the opportunity to investigate, mediate, and take remedial action").

However, claims not raised in an EEOC complaint may be brought in federal court if they are "reasonably related" to the claim filed with the agency. *Williams v.*

*NYC Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006)* (per curiam) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).* A claim raised for the first time in district court is "reasonably related" to allegations in an EEOC charge "where the conduct complained [*10] of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts, 990 F.2d at 1402* (internal quotation marks and citation omitted); *accord Holtz, 258 F.3d at 83.* "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Williams v. NYC Hous. Auth., 458 F.3d at 70* (internal quotation marks and citation omitted).

In his EEOC charge, Plaintiff asserted that Defendant NYCHA denied him a promotion because of his age and in retaliation for his prior EEOC activity. He stated that these were the "sole" bases for the denial. Veytsman Decl., Ex. A. Although his Title VII race discrimination and additional ADEA claims were not previously raised, Plaintiff argues that they should not be dismissed because they are reasonably related to the claims contained in the EEOC charge.

Plaintiff's Title VII claims based on race or national origin discrimination are not reasonably related to the allegations of age discrimination contained in the EEOC charge. *See Holtz, 258 F.3d at 84* (holding religious discrimination was not reasonably related to [*11] age discrimination and sexual harassment); *Cruz v. NYC Dep't of Educ., 378 Fed. Appx. 82, 84-85 (2d Cir. 2010)* (dismissing disability claims as unexhausted because they were not reasonably related to EEOC claim of age discrimination); *Chen v. Citigroup Inc., Inc., No. 03 Civ. 6612 (GBD), 2004 U.S. Dist. LEXIS 24895, 2004 WL 2848539, at *2 (S.D.N.Y. Dec. 9, 2004)* ("Regardless of whether plaintiff's Title VII claim is based on race, color, sex, religion and/or national origin, it is not reasonably related to her disability claim.").

As to the additional discriminatory acts alleged under the ADEA, the harassment by Diaz and false accusations are not reasonably related to the alleged failure to promote. These are isolated incidents, involving different actors, that "bear[] no factual or legal relation to the allegations in the EEOC charge and would not naturally be addressed in the course of an EEOC investigation into such allegations." *Holtz, 258 F.3d at 84* (holding denial of bonus and overtime pay not reasonably related to EEOC allegations of failure to train because of age, sexual harassment, or retaliatory discharge). However, failure to train, involuntary transfer, and disparate pay on the basis of age are reasonably [*12] related to the alleged failure to promote. *See id.* (concluding retaliatory failure to promote and transfer are reasonably related to failure

to train because it was "reasonable to suspect that the EEOC, in investigating [plaintiffs] complaint of failure to train because of age, would have assessed [defendant's] promotion and transfer policies." (quoting *Holtz v. Rockefeller & Co., Inc.*, No. 96 Civ. 9484 (WK), 1999 U.S. Dist. LEXIS 17683, 1999 WL 1043866, at *3 (S.D.N.Y. Nov. 17, 1999)).

Plaintiffs Title VII claim is dismissed for failure to exhaust administrative remedies. Plaintiff's ADEA claim is dismissed to the extent that it is based on harassment and false criminal accusations.

### b. Timeliness

### i. ADEA Claim

In New York, a plaintiff seeking to recover under the ADEA must file a discrimination charge with the EEOC within 300 days of the occurrence of the allegedly unlawful employment practice. *See* 29 U.S.C. § 626(d); *Kassner v. 2nd Ave. Delicatessen*, 496 F.3d at 237. "When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts*, 990 F.2d at 1401. Courts have permitted an exception to the 300-day period under the ADEA where a plaintiff can show a "continuing violation." [4] *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997). [*13] Under this doctrine, if a "plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). However, a plaintiff may not recover "for discrete acts of discrimination that occur outside the statutory time period," even when they are related to acts alleged in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Lambert v. Genesee Hosp.*, 10 F.3d at 53 ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. "The rationale behind the 'discrete act' rule is that when a plaintiff is harmed by a discrete act, he should be aware of it: '[t]o permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed . . . would be to enable him [*14] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.'" *Stephens v. Hofstra Univ. Sch. of Law*, No. 01 Civ. 5388 (DRH) (MLO), 2005 U.S. Dist. LEXIS 37549, 2005 WL 1505601, at *3 (E.D.N.Y. Jun. 24, 2005) (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980)).

4    The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of "compelling circumstances." *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

Plaintiff claims that the following acts constitute a continuing violation: hostility he faced after reporting illegal actions in October 2006; harassment by Diaz in 2008 when he refused to sign off on a project; the assignment to CPM III; failure to promote; the false criminal accusations, subsequent investigation and suspension; discriminatory pay; and involuntary transfer. It is well settled that failures to promote, discriminatory pay, job transfers, and unfavorable assignments are discrete acts that cannot form the basis of a continuing violation claim. *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of [*15] transfer, or refusal to hire are easy to identify."); *Lightfoot v. Union Carbide Corp.*, 110 F.3d at 907 (holding discontinuance of particular job assignment is discrete act); *Pollis v. New Sch. For Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (holding claim of discriminatory pay involves series of discrete, individual wrongs). As to the hostility, harassment, and false criminal accusations, Plaintiff alleges no facts that suggest that these incidents were motivated by discriminatory animus. Furthermore, Plaintiff alleges no connection between the three incidents, which each apparently involved different managers and took place approximately one and a half years apart. *See Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 69 (S.D.N.Y. 2002) (holding discrete, unrelated claims of discriminatory treatment by different managers cannot form the basis of continuing violation); *Crosland v. City of New York*, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001) (holding that actions by different supervisors in different departments militate against finding of continuing violation).

Plaintiff also argues that his claims are not time barred because they constitute a hostile work environment claim. *See, e.g.*, [*16] *Morgan*, 536 U.S. at 103 (Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' it does not matter that some of the component acts fall outside the statutory time period"). As discussed *infra*, Plaintiff's hostile work environment claim fails on the merits and thus cannot form the basis of a continuing violation.

Plaintiff filed the EEOC charge on May 26, 2009. Accordingly, his ADEA claims are dismissed to the extent that they are based on acts that occurred prior to July 30, 2008.

ii. NYHRL, NYCHRL, § 1981, and § 1983 Claims

In New York, the statute of limitations applicable to claims brought under § 1981 and § 1983 is three years. *Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).* A three year statute of limitations also applies to discrimination and retaliation claims under the NYHRL and NYCHRL. *Kassner v. 2nd Ave. Delicatessen, 496 F.3d at 238.* These claims are dismissed to the extent that they are based upon actions occurring prior to November 23, 2007, three years prior to the filing of this action, including Plaintiff's claims based on hostility following the October 2006 meeting [*17] and the assignment of CPM III tasks in 2007.

c. Discrimination Claims under the ADEA, NYHRL, and NYCHRL.

A *prima facie* case of discrimination based on age, race, or national origin requires that a plaintiff demonstrate membership in a protected class, qualification for his position, an adverse employment action, and circumstances that support an inference of discrimination. *Kassner v. 2nd Ave. Delicatessen, 496 F.3d at 238* (age); *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)* (race). "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. NYC Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)* (quoting *Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).* It "could consist of, *inter alia*, 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" [*18] *Kassner v. 2nd Ave. Delicatessen, 496 F.3d at 238* (quoting *Crady, 993 F.2d at 136*). "At this stage of litigation, plaintiffs . . . need only provid[e] a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest." *Id.*

> 5    Discrimination claims brought pursuant to the ADEA, Title VII, the NYHRL, and the NYCHRL are analyzed under the same framework. *Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009).*

Plaintiff's discrimination claims include failure to promote, failure to train, discriminatory pay, harassment, and the initiation of false criminal proceedings and resulting investigation and suspension. It is not disputed

that Plaintiff is within a protected class or that he was qualified for his position. The remaining elements are in dispute.

i. Failure to Promote

In order to make out a *prima facie* case for discriminatory failure to promote, a plaintiff must show that he was qualified for the job for which he applied and that he was denied the job under circumstances giving rise to an inference of discrimination. *Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).* [*19] "[A]n inference of discrimination may be drawn by a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably." *Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005)* (quoting *Hunter v. St. Francis Hosp., 281 F. Supp. 2d 534, 542 (E.D.N.Y. 2003)).*

Plaintiff alleges that he was denied a promotion on five occasions between August 2008 and June 2010. For each, Plaintiff alleges upon information and belief that he is considerably older than the successful, non-minority candidates. Compl. ¶ 32. "[A] plaintiff may plead facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).* However, such allegations must be "accompanied by a statement of the facts upon which the belief is founded." *Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)* (quotation marks [*20] and citation omitted).

Here Plaintiff provides the Court with no facts whatsoever to support his allegations. While employees' exact ages and national origins may be peculiarly within the possession of the employer, Plaintiff does not identify any individuals promoted in his stead or provide any basis for his belief that those hired were younger or non-minority. Nor does he identify any comments made by supervisors or colleagues, or any other facts that would imply that he was denied the promotions on account of his age or ancestry. Plaintiff's mere belief is insufficient without "specific factual allegations to enable the Court to evaluate [his] information and belief assertions." *Rose v. Goldman, Sachs & Co., Inc., 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001); Dean v. Westchester Cnty. Dist. Attorney's Office, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000)* (holding mere fact that plaintiff believed and alleged on information and belief that white, male employees similarly situated were not disciplined for similar professional failures was "not a sufficient basis to infer discrimination").

Because Plaintiff does not submit sufficient factual allegations "to raise a right to relief above the speculative [*21] level," *Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929*, the failure to promote claims are dismissed.

### ii. Discriminatory Pay

Plaintiff alleges that since February 2007 he was not paid on an equal basis with his similarly situated younger, non-minority co-workers, including project managers Brian Fallon and Frances Sanicola. Compl. ¶ 42. Although Plaintiff does not provide the basis for his belief that Fallon and Sanicola are younger or non-minority, drawing all inferences in Plaintiff's favor, the fact that Plaintiff knew the managers is adequate at this stage of the litigation. [6] These allegations of differential treatment are sufficient to infer discriminatory intent. *Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2000)* ("One way to create an inference of discrimination is to show that similarly situated employees, outside plaintiff's protected class, were treated preferentially."). The motion to dismiss Plaintiff's ADEA, NYHRL, and NYCHRL claims on this ground is denied.

> 6   Plaintiff also alleges that two younger, "white" managers were given raises in 2007, while Plaintiff did not receive a raise despite comparable work. It is not clear whether or not these co-workers are Fallon and Sanicola [*22] and thus whether Plaintiff provides a sufficient factual basis for this aspect of the claim. Drawing all inferences in Plaintiff's favor, the Court will assume that the two incidents involve the same individuals.

### iii. Failure to train

Plaintiff alleges that he requested training on the "PRIMAVERA" software computer program that would help him quality for a promotion. Even if this denial were sufficiently serious to qualify as an adverse employment action, Plaintiff does not allege that similarly situated employees were provided with training on the program or allege any other facts from which the Court could infer discriminatory intent. To the extent Plaintiff's discrimination claims are based on failure to train, they are dismissed.

### iv. Harassment

To the extent Plaintiff bases his discrimination claim on hostility and harassment by Diaz or other supervisors, such conduct does not constitute an adverse employment action. *See, e.g., Meder v. City of New York, No. 05 Civ. 919, 2007 U.S. Dist. LEXIS 39874, 2007 WL 1231636, at *4 (E.D.N.Y. Apr. 23, 2007)* (unpleasant workplace, ex-

cessive scrutiny and unfair criticism by supervisor not materially adverse employment actions); *Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 373* [*23] (holding allegations of verbal abuse and insults are not adverse employment actions); *Katz v. Beth Israel Med. Ctr., No. 95 Civ. 7183 (AGS), 2001 U.S. Dist. LEXIS 29, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001)* ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work part time . . . do not rise to the level of adverse employment actions."). These claims are dismissed.

### v. Criminal Proceedings

Plaintiff alleges that Defendants Pinnock, Diaz, Paulino, Rodriguez, and Otero falsely accused him of an unspecified crime on April 2, 2008, which resulted in Plaintiff's arrest and suspension without pay. Because this claim is time-barred under the ADEA, Plaintiff may only bring it under the NYHRL and NYCHRL. False accusations that result in suspension without pay may qualify as adverse employment actions. *See Crady, 993 F.2d at 136* (holding material adversity "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.").

However, Plaintiff [*24] does not adequately allege that these actions occurred under circumstances giving rise to an inference of discrimination. Plaintiff does not explain what charges were brought against him, the nature of the investigation, or the underlying incident that gave rise to it. Furthermore, Plaintiff acknowledges that he was found guilty in part of the charges. Without factual allegations that suggest the disciplinary charges were discriminatorily motivated, these allegations are insufficient to survive a motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen, 496 F.3d at 241* (holding allegation that defendant suspended plaintiff without pay did not state claim where complaint "fail[ed] to allege any facts about the circumstances surrounding the suspension and the incident that gave rise to it"). To the extent Plaintiff's claims are based on the criminal charges and related events, they are dismissed.

### d. Retaliation Claims Under Title VII, the ADEA, NYHRL, and NYCHRL [7]

> 7   Plaintiff does not state whether his 2002 EEOC filing asserted Title VII, ADEA, NYHRL, or NYCHRL claims such that he could recover for subsequent retaliation under any or all of these statutes. Because the standard is the same [*25] under each statute and Defendants do not

move to dismiss on this ground the Court evaluates the claim under the assumption that Plaintiff brought claims under at least one of these statutes. Because Plaintiff did not raise a Title VII claim in his 2009 EEOC filing, he may not recover under Title VII for retaliation occurring after that filing.

The ADEA and Title VII make it unlawful for an employer to discriminate against an employee because he has engaged in an age or race discrimination-related protected activity. *Gomez-Perez v. Potter*, 553 U.S. 474, 479, 128 S. Ct. 1931, 170 L. Ed. 2d 887 (2008) (holding ADEA prohibits "retaliation based on the filing of an age discrimination complaint"); 42 U.S.C. § 2000e-3(a) (Title VII). To establish a *prima facie* case of retaliation, a plaintiff must show (1) that he participated in a protected activity, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between his engaging in the protected activity and the adverse employment action. [8] *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). In the retaliation context, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting [*26] a charge of discrimination." *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (quotation marks and citation omitted). This standard is somewhat broader than the adverse employment action standard used in discrimination cases. *See id.* at 67.

> 8    The same standard is applied to retaliation claims under the NYSHRL. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13, 819 N.E.2d 998, 786 N.Y.S.2d 382 (2004) (applying same standard for Title VII and NYSHRL retaliation claims). The elements of retaliation under the NYCHRL differ only in "that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Jimenez v. City of New York*, 605 F.Supp.2d 485, 528 (S.D.N.Y. 2009) (quoting *NYCHRL § 8-107(7)*). Applying this standard to the case at bar, the outcome is the same as that under Title VII and the ADEA.

Plaintiff filed EEOC complaints in 2003 and 2009. Even if all of the alleged acts of retaliation qualify as adverse employment actions, each act was too remote in time from the alleged protected activities to support an inference of retaliatory intent, and Plaintiff [*27] has failed to allege any other causal connection between these acts and Plaintiff's protected activities. The first alleged failure to promote following Plaintiff's initial

EEOC filing was in January 2008, six years after his initial EEOC filing and two years after the case was dismissed. Although this Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," courts have generally limited the bounds to a matter of months, and certainly not several years. *Gorman-Bakos v. Cornell Co op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases); *Lynk v. Henderson*, 2000 U.S. Dist. LEXIS 1496, 2000 WL 178859, at *4 (S.D.N.Y. Feb. 15, 2000) (three years between EEO complaint and reprimand too great to show causal relationship); *Suggs v. Port Auth. of N.Y. & N.J.*, 1999 U.S. Dist. LEXIS 6319, 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (holding six months between filing EEOC complaint and firing suggests causal relationship); *Castro v. Local 1199, Nat'l Health & Human Servs. Emps. Union*, 964 F. Supp. 719, 728 (S.D.N.Y. 1997) (one year [*28] is too long to show causal connection between filing of EEOC complaint and termination). Furthermore, Plaintiff alleges that Defendant failed to promote him both prior to and after his initial and most recent EEOC filings, and Plaintiff's vague assertion on information and belief that unidentified individuals who were promoted were not whistleblowers is insufficient to distinguish these instances from those that were not alleged to be retaliatory. Compl. ¶ 33; *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Similarly, Defendants failed to adjust Plaintiff's salary in February 2007, and the harassment and false charges incidents took place in February and April 2008, respectively. It is unclear from the Complaint when the refusal to train Plaintiff in the software program occurred and there is no allegation that the failure to train was retaliatory. Because Plaintiff does not adequately allege retaliation based on either of his two EEOC complaints, [*29] his retaliation claims are dismissed.

## c. Hostile Work Environment

A hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted). Minor, isolated acts will not merit relief. *Kassner v. 2nd Ave. Delicatessen*, 496 F.3d at 240; *Kotcher v. Rosa*

& Sullivan Appliance Co., 957 F.2d 59, 62 (2d Cir. 1992). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999).

The incidents that Plaintiff alleges constitute a hostile work environment include: "extreme hostility and threats of retribution" in October 2006 when Plaintiff complained about having been asked to improperly sign off on projects; the CPM III assignment in February 2007; denying plaintiff's repeated requests for promotion; Diaz's hostility when Plaintiff refused to improperly sign off on a job; the false criminal [*30] accusations in April 2008 and the subsequent investigation and suspension; discriminatory pay; involuntarily transfer; and retaliation against plaintiff when he complained about his treatment. Compl. ¶ 28; Pl. Opp'n 4-5.

Assuming these actions are sufficiently severe or pervasive to merit relief, there is nothing in the Complaint to suggest that Plaintiff was subjected to hostility because of his age or race. Plaintiff does not allege that Defendants made any derogatory comments referencing his age or race, or ever mentioned them at all. In fact, Plaintiff admits that, in most instances, the treatment was not age or race-motivated, but was motivated by Plaintiff's refusal to work more quickly or improperly sign off on jobs.

Furthermore, Plaintiff's allegations are too vague to put Defendant on notice and are thus insufficient as a matter of law. Plaintiff does not identify any of the statements that he found hostile or threatening. While Plaintiff alleges that Diaz became "enraged," he does not identify what Diaz said or any actions he took. Cf. Kassner v. 2nd Ave. Delicatessen, 496 F.3d at 240-241 (plaintiff who alleged she was pressured to retire, improperly suspended, and given unfavorable [*31] work assignments did not state hostile work environment because "complaint alleges no specific facts as to what was done to pressure [plaintiff] to retire" and "fails to allege any facts about the circumstances surrounding the suspension and the incident that gave rise to it"). Plaintiff does not describe where he was transferred from or to, or why he found the transfer unfavorable. Finally, Plaintiff's claim that he was assigned more advanced tasks does not allege that he found the tasks adverse, and in fact Plaintiff alleges he was qualified for the work and performed the tasks well.

Plaintiff's vague allegations of isolated acts of hostility are insufficient as a matter of law to state a claim for hostile work environment.

**f. Section 1981 and 1983 Discrimination Claims**

9  Defendant argues that Plaintiff cannot recover under § 1981 for discrimination based on his status as a Ukrainian-born man of Russian ancestry.9 Although § 1981 does not apply to discrimination on the basis of national origin, the term "race" is broadly defined "'to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic [*32] characteristics." Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987). Several courts have found that discrimination based on Russian ancestry is prohibited under § 1981. Id. (noting that in the post-Civil War period numerous ethnic groups were considered to constitute separate "races," including Swedes, Norwegians, Germans, Greeks, Finns, Italians, Spaniards, Russians, and Hungarians); Amini v. Oberlin Coll., 259 F.3d 493, 503 (6th Cir. 2001) (holding under § 1981 conception of race plaintiff can allege discrimination based on any of a number of ethnicities, including Russian); cf. Franchitti v. Bloomberg, L.P., 03 Civ. 7496 (LAK) (JCF), 2004 U.S. Dist. LEXIS 21071, 2004 WL 2366183, at *3-4 (S.D.N.Y. Oct. 20, 2004) (permitting § 1981 claim to go forward where plaintiff "does not allege that he was harassed exclusively because of his place of birth .... [but] at least in part because his ethnic origins are French."). That Plaintiff identifies himself as a "white male" is irrelevant if he can demonstrate that he was discriminated against on the basis of his Russian heritage and distinct ethnic characteristics. While it is not clear at this stage whether or not Plaintiff could carry this burden, the [*33] Court declines to dismiss the case on that basis at this time.

Most of the substantive standards that apply to claims of discriminatory conduct, hostile work environment, and retaliation in violation of the ADEA, NYHRL, and NYCHRL also apply to claims under § 1981 and § 1983. However, the Court of Appeals for the Second Circuit has articulated a number of differences. First, individuals may be held liable under § 1981 and § 1983 for certain types of discriminatory acts. Patterson, 375 F.3d at 226. Second, where the defendant sued for discrimination is a municipality or an individual sued in his official capacity, a plaintiff must show that the challenged acts were performed pursuant to a municipal policy or custom. Id. Finally, while a Title VII claim may be established through proof of a defendant's mere negligence, a plaintiff pursuing a claim under § 1981 or § 1983 must show that the discrimination was intentional. Id.

10    Whether the ADEA preempts age discrimination claims brought under § 1983 remains an open question in the Second Circuit. *Batts v. NYC Dep't of Hous. Pres. & Dev., 307 Fed. Appx. 596, 598 n.1 (2d Cir. 2009)* (declining to address whether ADEA preempts age discrimination [*34] claims based on violation of *Equal Protection Clause* and brought under § 1983). Because the weight of authority in this Circuit favors the position that the ADEA does not preempt such claims, the Court will assume for the purpose of deciding this motion that Plaintiff's age discrimination claim is not preempted. *See, e.g., Shapiro v. NYC Dep't of Educ., 561 F. Supp. 2d 413, 426 (S.D.N.Y. 2008)* ("[T]he effective law in the Second Circuit is that the ADEA does not preempt a § 1983 claim for age discrimination in violation of the *Equal Protection clause.*"); *Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 868 (S.D.N.Y. 2001)* (holding § 1983 claim is not preempted by ADEA).

The claims dismissed as inadequately pled under the ADEA, NYHRL, and NYCHRL are dismissed for the same reason under § 1981 and § 1983. Thus, the discussion below is limited to Plaintiff's surviving discriminatory pay claim.

### i. NYCHA and Defendants Sued in Their Official Capacities

Under *Monell v. Department of Social Services,* a municipality can be liable under § 1983 for the unconstitutional acts of its employees if such acts were carried out in "execution of a government's policy or custom, whether made by its lawmakers [*35] or by those whose edicts or acts may fairly be said to represent official policy." *436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).* The existence of an "official policy" may not be inferred "merely from a single incident unless the challenged act is one that municipal policymakers have 'officially sanctioned or ordered.'" *Carnegie v. Miller, 811 F. Supp. 907, 911 (S.D.N.Y. 1993)* (quoting *Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).*

"Where, as here, a plaintiff does not claim that the actions complained of were taken pursuant to a formally ratified policy but instead asserts that they were taken by an official whose actions represent official municipal policy, the Court must determine whether the official had final policymaking authority in the specific area at issue." *Shapiro v. NYC Dep't of Educ., 561 F. Supp. 2d at 420* (citing *Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000)); Pembaur v. City of Cincinnati, 475 U.S. at 483-84.* Policymaking authority may derive from "express legislative grant or delegation by those to whom the power has been expressly granted." *Ramos v. City of New York, No. 96 Civ. 3787 (DLC), 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997).* The official need not be a policymaker [*36] for all purposes, but, "with respect to the conduct challenged, he must be responsible under state law for making policy *in that area* of the [municipality's] business." *Jeffes v. Barnes, 208 F.3d at 57* (internal citation and quotation marks omitted). "[T]o the extent his discretionary decisions are constrained by policies not of his making, those policies, rather than his purported departures from them, are the acts of the agency." *Ramos v. City of New York, 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493, at *4.*

Courts in this District have repeatedly held that, under New York law, "the NYCHA's three-person Board of Commissioners and the Commissioner of Citywide Administrative Services are the only people expressly granted final policymaking authority in the area of employment at the NYCHA." *Chin v. NYC Hous. Auth., 575 F. Supp. 2d 554, 565 (S.D.N.Y. 2008)* (citing *N.Y. Pub. Hous. Law §§ 37, 400-402* and *N.Y.C. Chart. §§ 811, 814(a)(12))* (Director of Financial Operations at NYCHA did not have final policy-making authority for *Monell* purposes); *Ramos v. City of New York, 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493, at *4* (holding that NYCHA Board had final policymaking authority). None of the individual Defendants is alleged to be a member of the [*37] Board. To the extent they had authority to promote, assign job duties, determine salaries, and initiate disciplinary charges, each was constrained by the NYCHA's employment policies promulgated by the Commissioners. Assuming *arguendo* that their treatment of plaintiff violated those policies, such violation would not constitute a reformulation of agency policy but rather a deviation for which municipal agencies are not liable. *Chin v. NYC Hous. Auth., 575 F. Supp. 2d at 566* ("[E]ven if [defendant] had complete discretion to transfer or not transfer plaintiff, having this discretion would not make him a final policymaker but merely a final decisionmaker."); *Carrero v. NYC Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989)* (dismissing discrimination claims against NYCHA pursuant to *Monell* because supervisor's "actions cannot fairly be attributable to Housing Authority practice or policy" as "its stated policies are explicitly nondiscriminatory").

Because the individual Defendants are not final policymakers as a matter of law, Plaintiff's municipal liability claims under § 1981 and § 1983 are dismissed.

### ii. Defendants Sued in Their Individual Capacities

In order to make out a claim for individual [*38] liability under § 1981 and § 1983, a Plaintiff "need not establish a connection to governmental policy or cus-

tem." *Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).* However, he "must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000)* (internal quotation marks and citation omitted). Personal liability must be "predicated on the actor's personal involvement" in the claimed violation. *Id.* (internal quotation marks and citation omitted).

The only individual Plaintiff alleges was involved in his discriminatory pay claim is Defendant Pinnock. Plaintiff alleges that he "complained to no avail to Defendant Pinnock" about raises given to two other employees. Compl. ¶ 45. However, he does not allege that Pinnock, as Director of Human Resources, was responsible for determining Plaintiff's salary and the salaries of other employees. Because Plaintiff does not allege a causal link between any individual Defendant and the alleged discriminatory act, the motion to dismiss Plaintiff's § 1981 and § 1983 claims against the individual Defendants is granted.

### g. *Section 1985* Claim

A *prima facie* [*39] conspiracy claim under *42 U.S.C. § 1985(3)* requires a plaintiff to demonstrate: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).* The conspiracy must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)).*

Although a conspiracy "need not be shown by proof of an explicit agreement," *Thomas v. Roach, 165 F.3d at 146,* a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003)* (quoting *Romer v. Morgenthau, 119 F. Supp 2d 346, 363 (S.D.N.Y. 2000)).* "A complaint containing only conclusory, [*40] vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon, 709 F.2d 173, 174-75 (2d Cir. 1983); accord Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999).*

Plaintiff alleges that Defendants Pinnock, Diaz, Paulino, Rodriguez, and Otero "conspired against him when they falsely accused him and gave false testimony against him." However, Plaintiff admits that "[t]he purpose of the conspiracy was to discredit Plaintiff for his refusal to succumb to supervisor and co-worker pressure to move jobs along at a faster improper rate and improperly sign off on jobs," Compl. ¶¶ 34-36, not for any discriminatory reason. To the extent Plaintiff relies on any other acts to support a conspiracy claim under § 1985, he provides no facts supporting an agreement among the Defendants. That they worked for the same organization and followed the same alleged policy is insufficient. *See Cine SK8, Inc., 507 F.3d at 792* (finding letter from board member citing discussions and "strong consensus" among board members insufficient evidence of conspiracy to survive summary judgment). Because Plaintiff's factual allegations [*41] do not support finding a conspiracy, his § 1985 claim is dismissed.

### h. *First Amendment* Retaliation under *§ 1983*

The standard for assessing when the speech of a public employee is protected from retaliation by the *First Amendment* "entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" *Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)* (quoting *Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).* "Speech by a public employee is on a matter of public concern if it relates to any matter of political, social, or other concern to the community." *Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003)* (quoting *Connick, 461 U.S. at 146).* Speech "focused on matters personal to the employee . . . cannot be classified as being on a matter of public concern and the government, acting as an employer, 'has greater latitude to discipline' the employee." *Id.* (quoting *Connick, 461 U.S. at 146).* "The heart of the matter is whether the employee's speech was 'calculated to redress personal [*42] grievances or whether it had a broader public purpose.'" *Ruotolo, 514 F.3d at 189* (quoting *Lewis, 165 F.3d at 163-64).* "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim, 342 F.3d at 112.*

Plaintiff rests his *First Amendment* retaliation claim on two grounds. First, he alleges that he was retaliated against because he complained about being falsely accused of a crime. Yet Plaintiff does not explain when or to whom he complained or how and when he was retaliated against. Such vague allegations are insufficient to state a claim. *See Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005)* ("[W]e must be satisfied that [a *First Amendment* retaliation] claim is 'supported by specific and detailed factual allegations,' which are not stated 'in wholly con-

clusory terms.'" (quoting *Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)*). Furthermore, Plaintiff's alleged speech regards a private matter not of public concern. Plaintiff alleges no facts from which the Court could infer that he sought to redress anything but a personal grievance, and there is no allegation that the NYCHA has a policy of bringing false actions against [*43] its employees. *Cf. Harman v. City of New York, 140 F.3d 111, 118 (2d Cir. 1998)* ("[D]iscussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." (internal quotations and citations omitted)).

Second, Plaintiff alleges he was retaliated against when he complained about pressure from management to work faster and to improperly approve projects. Compl. ¶¶ 27, 28, 34; Pl. Opp'n 15. In *Garcetti v. Ceballos*, the United States Supreme Court held that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline." *547 U.S. at 421* (finding no protection where plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case"). "This is true even when such speech regards a matter of public concern." *Anemone v. Metro. Transp. Auth., 629 F.3d 97, 116 (2d Cir. 2011)*. Plaintiff admits that both the responsibilities of a NYCHA Construction Project Manager "and the issues of which [Plaintiff] complained concerned [*44] improper construction practices and work." Pl. Opp'n 15. Courts have interpreted *Garcetti* to foreclose *First Amendment* retaliation actions in such instances where the speech is "part-and-parcel" of a public employee's official duties. *See, e.g., Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of New York, 593 F.3d 196, 202-03 (2d Cir. 2010)* (where public teacher filed grievance with union representative in response to inadequate discipline im-

posed on student, grievance "was 'pursuant to' [plaintiff's] official duties because it was 'part-and-parcel of his concerns' about his ability to 'properly execute his duties' as a public school teacher -namely, to maintain classroom discipline." (quoting *Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007)*; *Anemone v. Metro. Transp. Auth., 629 F.3d at 117* (holding plaintiff's "contacts with the DA were clearly official, part and parcel of his duties as MTA's Director of Security"). This is so even where a plaintiff's action "is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub, 593 F.3d at 203*. To the extent Plaintiff's claim rests upon complaints [*45] regarding safe construction practices, it was not protected because it was pursuant to or in furtherance of his job duties. Plaintiff's *First Amendment* retaliation claim is dismissed.

### I. Conclusion

For the reasons set forth herein, Defendants' motion to dismiss is granted as to all claims except for Plaintiff's discriminatory pay claim under the ADEA, NYHRL, and NYCHRL. The parties are ordered to conduct mandatory mediation pursuant to *Local Civil Rule 83.12* to attempt to resolve consensually the remaining issues in this case. The parties shall notify the Court in writing of the status of this case within three months of the date of this Order or within thirty days of the final mediation session, whichever is earlier.

SO ORDERED.

Dated: May 18, 2011

New York, NY

/s/ Leonard B. Sand

U.S.D.J.



VICTORIA MEDER, Plaintiff, - against - THE CITY OF NEW YORK and the
NEW YORK CITY DEPARTMENT OF EDUCATION, Defendants.

05 CV 919 (JG)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW
YORK

*2007 U.S. Dist. LEXIS 30874*

**April 27, 2007, Decided
April 26, 2007, Filed**

**NOTICE:**   [*1]   FOR ELECTRONIC PUBLICA-
TION ONLY

**SUBSEQUENT HISTORY:** Related proceeding at
*Meder v. City of New York, 2007 U.S. Dist. LEXIS 75400
(E.D.N.Y., Oct. 9, 2007)*

**PRIOR HISTORY:** *Meder v. Bd. of Educ., 132 Fed.
Appx. 467, 2005 U.S. App. LEXIS 10821 (2d Cir. N.Y.,
2005)*

**COUNSEL:** LAW OFFICE OF ANTHONY D. DE-
NARO, P.C., Hempstead, N.Y., By: Anthony D. Denaro,
Attorneys for Plaintiff.

MICHAEL A. CARDOZO, Corporation Counsel of the
City of New York, New York, N.Y., By: Jonathan Bar-
david, Attorney for Defendants.

**JUDGES:** John Gleeson, U.S.D.J.

**OPINION BY:** John Gleeson

**OPINION**

MEMORANDUM AND ORDER

JOHN GLEESON, United States District Judge:

Victoria Meder, a former teacher with the New York
City Department of Education ("DOE"), brings this ac-
tion pursuant to the Age Discrimination in Employment
Act of 1967 ("ADEA"), *29 U.S.C. § 621 et seq.*, and the
New York State Human Rights Law, *N.Y. Exec. Law §*
290 et seq. [1] Meder claims her employer discriminated
against her because of her age, created a hostile work
environment because of her age, and took retaliatory
action against her because she had previously filed a
lawsuit against the DOE's predecessor agency. The de-
fendants have moved for summary judgment. For the
reasons set forth below, the motion is granted.

> 1    Meder also sued under Title VII of the Civil
> Rights Act of 1964. *42 U.S.C. § 2000e et seq.*
> That claim is not at issue. The analysis of Meder's
> claims pursuant to the New York State Human
> Rights Law parallels the analysis of her federal
> antidiscrimination claims. *See Abdu-Brisson v.
> Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.
> 2001), cert. denied 531 U.S. 993, 122 S. Ct. 460,
> 151 L. Ed. 2d 378 (2001).*

[*2]   BACKGROUND [2]

2    Unless noted otherwise, these facts are not in
dispute and are taken from the defendants' State-
ment of Undisputed Facts Pursuant to Local Rule
56.1. That local rule provides in relevant part that
"each statement" listed by a movant or opponent
in their Rule 56.1 papers, "*including each state-
ment controverting any statement of material
fact*, must be followed by citation to evidence
which would be admissible, set forth as required
by *Federal Rule of Civil Procedure 56(e).*" *Local
Civ. R. 56.1(d).* Meder's Rule 56.1 statement fails
to provide any such citations. At oral argument,
plaintiff's counsel was unable to supplement the
statement with any citations to the record. Accor-

dingly, I do not consider that statement to controvert any of defendants' statements of facts.

Meder was born on July 26, 1939. At the time she filed this lawsuit, she had been employed as a teacher in the New York City public schools for 17 years.

In September 2001, Meder was transferred [*3] to P.S. 220 in Queens. On March 22, 2002, Meder filed a lawsuit against, inter alia, the New York City Board of Education, alleging discrimination and the creation of a hostile work environment on the basis of her age during the 2000-01 school year, when she had been assigned to P.S. 108. See Meder v. City Sch. Dist. of New York, 02-CV-1774 (CPS) (SMG) (E.D.N.Y. Mar. 22, 2002).

Lawrence Pearlstein was appointed Principal of P.S. 220 in May 2002. Meder received a 'satisfactory' rating on her annual performance evaluation by Pearlstein for the 2002-03 school year. In September 2003, Hope Monnes was appointed Assistant Principal of the school. In this action, Meder complains of conduct that she alleges took place during the 2003-04 school year, following Monnes's appointment.

Meder alleges a variety of harassing conduct. First, she claims that she was subjected to excessive scrutiny. Specifically, Meder contends that Pearlstein and Monnes visited her classroom frequently. They are required to visit classrooms and monitor teachers, but Meder alleges other teachers were not subject to such frequent visits. Meder further claims that Beth Segal, the Math Coach assigned to assist [*4] teachers with a new curriculum for the second grade, visited her classroom 20 to 25 times, more frequently than she visited other teachers. Segal once interrupted the lesson and began to teach it herself; she also reviewed Meder's students' notebooks, and tested them. Defendants assert that Segal's responsibility was to visit all teachers, but Meder believed only new teachers were subject to Segal's review. See Meder Dep. 152, June 28, 2006. Meder also contends that teams of parents, teachers and administrators assigned to visit classrooms pursuant to a Performance Assessment in Schools System ("PASS") Review conducted of the entire school spent a disproportionate amount of time in her classroom.

Second, Meder alleges that she was subjected to unfair criticism of her job performance. On October 29, 2003, after a formal evaluation, Monnes rated as unsatisfactory a literacy lesson taught by Meder. Meder believed that the evaluation contained false information. See id at 201. The evaluation was bracketed by pre- and post-observation conferences between Meder and Monnes. Meder filed a grievance objecting to the evaluation, which was denied at all three levels of the grievance [*5] process. On November 10, 2003, Pearlstein put in Meder's personnel file a letter he had sent to her discuss-

ing her absence from part of a staff development meeting. Meder filed a grievance objecting to the letter, which was sustained. The letter was removed from the file the same day. On November 18, 2003, a parent of a student in Meder's class complained to Pearlstein that Meder had assigned a repetitive writing assignment. On December 16, 2003, Pearlstein sent Meder a letter informing her the assignment was not an approved disciplinary response. The same day, Monnes wrote Meder a memorandum stating Monnes had seen Meder leave students unsupervised in the school lobby and that it was inappropriate to do so. Meder denies she did so, and sent Monnes a response to that effect. On June 1, 2004, Pearlstein, Meder, and Meder's union representative met to discuss her punctuality. Pearlstein told Meder her time card indicated she had been late 15 times during the school year -- Pearlstein approved each incident except one. Pearlstein sent Meder a memorandum memorializing the discussion. The record reflects some dispute about whether Meder was in fact late on some of those occasions. See [*6] id. at 231. Finally, Meder claims Monnes criticized her unfairly for not timely completing certain testing of her students -- Meder alleges she was given insufficient time to complete the testing.

Third, Meder alleges that Pearlstein sent a Suffolk County Police Officer to visit her home when she was out sick from work. Defendants state, and Meder does not dispute, that the school secretary had been concerned for Meder's welfare on that day, as severe storms were reported. Meder had not reported to work, and the secretary was unable to reach her. Defendants state, and Meder does not dispute, that the secretary called the police to check on Meder out of concern for her safety.

Fourth, Meder claims several instances of harassment by Pearlstein. She alleges that he placed documents in her file that did not belong there; upon Meder's request, the documents were removed. She also claims that on October 24, 2003, Pearlstein denied her request to leave work a half-hour early a few days later. She further contends that Pearlstein assigned her a disproportionate number of students that were problematic; held up a tape recorder to her face when waiting for a response to a question; and shouted [*7] at her on at least two occasions in front of her students.

Fifth, Meder claims that in May 2004, Monnes sat next to her at a meeting and stared at her constantly, until she felt intimidated.

Sixth, Meder claims she received an undeserved rating of "unsatisfactory" on her annual performance evaluation. That evaluation, however, reflects that she received a satisfactory rating. See Bardavid Aff. Ex. BB, Oct. 20, 2006.

Meder points to two incidents that she claims demonstrate discriminatory animus. In February 2004, Pearlstein gave a speech at a faculty conference in which he mentioned that a former principal was retiring, and that "she's 61 years old and it's about time." Meder Dep. 141, June 28, 2006. At that point, Meder claims the principal looked directly at her and a co-worker. Meder also claims that while she was observing a co-worker's class, the co-worker told the students a story about a "grouchy" old woman who was "not nice." *Id.* at 267. In her complaint, Meder also claims that Pearlstein made a remark demonstrating retaliatory animus because he responded to her request for a class change because of inappropriate behavior by a male colleague by suggesting that she [*8] "take an action out." Compl. P 39.

After the conclusion of the 2003-04 school year, Meder transferred, upon her request, to another school.

DISCUSSION

A. *The Summary Judgment Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994)*. For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying [*9] facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting *Fed. R. Civ. P. 56(e)*) (emphasis omitted). Critically,

the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its

case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994)* (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita, 475 U.S. at 586*.

Although issues of discriminatory [*10] animus are not always resolvable at summary judgment, the Second Circuit has "remind[ed] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" *Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)* (quoting *McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)), cert. denied, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003)*.

B. *The Age Discrimination Claim*

The ADEA makes it illegal for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 623(a)(1)*. The Second Circuit applies the burden-shifting analysis of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, to ADEA discrimination claims. *See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 639 (2d Cir. 2000)*. Under this analysis,

a plaintiff first bears the "minimal" burden of setting out a *prima facie* discrimination case, and is then aided by a presumption [*11] of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.

*McPherson v. New York City Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006)* (citations omitted).

Defendants argue that Meder failed to meet her burden to produce evidence constituting a prima facie case of age discrimination. Establishing a prima facie case requires the production of evidence that the complainant (1) "was within the protected age group," (2) "was qualified for the position," (3) "was subject to an adverse em-

ployment action," and (4) that "the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (internal quotation marks omitted). Defendants concede, for the purposes of their motion, that Meder has satisfied the first and second requirements. They argue that Meder has failed to meet the third and fourth requirements. I agree.

An adverse employment action is "a materially [*12] adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640 (internal quotation marks and citations omitted).

Under this standard, most of the actions alleged by Meder do not constitute adverse employment actions. She has alleged no material change to the terms and conditions of her employment -- the evidence suggests only that her benefits and responsibilities remained the same. Her allegations of excessive scrutiny do not change this conclusion. *See Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (holding that excessive scrutiny by supervisors does not constitute an adverse employment action under Title VII). Accordingly, even if Pearlstein, Monnes, Segal, and others subjected Meder to more monitoring than they did other teachers, that is not sufficiently material [*13] a change to her conditions of employment to count for ADEA antidiscrimination purposes.

Unfair criticism and other unpleasant working conditions are not adverse employment actions either. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.") (quoting *Lee v. New York State Dep't of Health*, No. 98 Civ. 5712, No. 99 Civ. 4859, 2001 U.S. Dist. LEXIS 11287, at *69 (S.D.N.Y. March 26, 2001)). Thus, the written and oral criticisms of Meder by Pearlstein and Monnes, even if unjustified, are not adverse employment actions. Similarly, that Pearlstein assigned Meder more students than other teachers, shouted at her twice, held a tape recorder to her face to record an answer, and so forth, and that Monnes stared at Meder at a meeting, are, no doubt, irritating behaviors. But they are not actionable.[3]

3   A negative performance evaluation might, granting all inferences in favor of Meder, constitute an adverse employment action. *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004). As discussed above, however, and as pointed out by defendants, *see* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 P 92, the performance evaluation in question states that Meder received a satisfactory rating. *See* Bardavid Aff. Ex. BB, Oct. 20, 2006. Meder concedes this point, both because her response to defendants' Rule 56.1 statement says she has "[n]o response" to the factual claim, *see* Plaintiff's Response to Defendant's [sic] Statement of Undisputed Facts P 92; *Local Civ. R. 56.1(c)* ("*Each numbered paragraph in the statement of* material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *for the purposes of the motion* unless *specifically* controverted by a *correspondingly numbered paragraph in* the statement required to be served by the opposing party."), and because that response is insufficient as a matter of law, *see supra* note 2.

[*14]   Meder makes a stronger case for discrimination with the claim that Pearlstein sent a police officer to her home when she was out sick. Without more to the story, such a visit is consistent with the interpretation that Pearlstein was intimidating Meder because she took a sick day. I infer that sick days were part of Meder's terms and conditions of employment and that she had to right to take a sick day on the day in question. In such a circumstance, sending a police officer to intimidate Meder for taking a sick day, or to force her to come to work, would effectively deny Meder her right to sick days. Such a material alteration of the terms and conditions of Meder's employment would constitute an adverse employment action.

But defendants state, and Meder does not controvert, that Pearlstein's secretary called the police to Meder's house because she was concerned for Meder's welfare, not because of any discriminatory animus. *See* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 P 75 ("Ms. Crawford was concerned for plaintiff's safety and called the Suffolk County Police Department to check on plaintiff."). Accordingly, the employment action did not [*15]  occur under circumstances giving rise to an inference of discrimination.

In sum, then, none of the actions complained of can support Meder's discrimination claim. Meder argues, however, that taken together the harassment of Pearlstein, Monnes, and others drove her out of the school. Constructive discharge is an adverse employment

action based on the employer "intentionally creat[ing] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry, 336 F.3d at 151-52.* The trouble with this argument is that Meder did not quit. Rather, she transferred to another school. The constructive discharge doctrine permits the employee to recharacterize an ostensibly voluntary resignation -- it is not an exception to the rule that purely lateral transfers are not adverse employment actions. *See Galabya, 202 F.3d at 640-41.* As Meder produces no evidence whatsoever "that the transfer created a materially significant disadvantage," *id. at 641* (internal quotation marks omitted), I cannot conclude she was constructively discharged.

Accordingly, Meder has not met her burden of production for a prima facie case of age [*16] discrimination.

## C. *The Hostile Work Environment Claim*

Meder argues that the conduct in question created a hostile work environment. Title VII affords relief where a plaintiff can establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)* (citations and internal quotations omitted). Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id. at 23.* There is both a subjective and an objective component to the hostile work environment test. *See Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001).* In addition, the complainant must establish that the conduct occurred "because of" a protected characteristic. *Id. at 692.* The hostile work environment analysis under the ADEA tracks that of Title VII. *Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999).* [*17]

Meder fails to produce evidence from which a rational jury could conclude that the actions she alleges constituted a hostile work environment. The record contains plenty of evidence that Meder herself felt her environment was abusive, but no evidence that the conduct she complains about was objectively so severe as to alter the terms and conditions upon which Meder was employed. There is no evidence, for example, that those actions affected Meder's work performance. Even viewing the evidence in the light most favorable to Meder, most of the alleged conduct reflects overinvolvement and micromanaging in Meder's supervisors on work-related matters. She does allege that the principal and a co-worker made remarks that could be construed as indirectly antipathetic toward Meder's age, that Pearlstein

shouted at her and held a microphone to her face to record a response, and that Mornes stared at her during a meeting. But a hostile work environment is something more than having a difficult or aggressive boss. It is a pervasively toxic environment, necessarily affecting the terms and conditions under which one is employed. I conclude that, as a matter of law, the facts alleged are insufficient [*18] to sustain a finding that such an environment existed here.

## D. *The Retaliation Claim*

The ADEA prohibits an employer from retaliating against an employee for opposing an unlawful employment practice or for participating in any manner in an investigation, proceeding, or litigation pursuant to the ADEA. *See 29 U.S.C. § 623(d).* A prima facie case for retaliation consists of evidence of (1) participation in such a protected activity with (2) the knowledge of the employer, (3) that the employee suffered a materially adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006).* While Meder filed a discrimination lawsuit that might provide the predicate for a retaliation claim, Meder's prima facie case for retaliation fails because she proffers no admissible evidence linking the offending actions to any retaliatory animus. [4]

> 4    Because I conclude that Meder's prima facie case fails for want of evidence of animus, I do not consider whether Meder presents sufficient evidence of an adverse employment action on her retaliation claim, that is, whether the alleged actions "could well have dissuaded a reasonable employee in [Meder's] position from complaining of unlawful discrimination." *Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 209 (2d Cir. 2006)* (applying the Title VII adverse employment action standard established in *Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006),* to an ADEA claim).

[*19]    Meder alleges in her complaint that Pearlstein responded to her request for a class transfer by suggesting that she "take an action out." Compl. P 39. Though I doubt that such a comment, if made, is sufficient evidence of a retaliatory animus, I need not decide that question because Meder points to nothing in the record to support her allegation, and I can find no such evidence in the affidavits, admissions, or depositions before the Court on this motion. Of course, an allegation in a complaint is itself inadmissible evidence of retaliatory animus. *See Fed. R. Civ. P. 56(e).*

Meder also alleges, in her complaint and in her response papers, that she was the victim of disparate treatment. Evidence of such treatment can support a finding of animus. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001), *cert. denied*, 534 U.S. 993, 122 S. Ct. 460, 151 L. Ed. 2d 378 (2001). But Meder points to no evidence that the teachers she claims were treated differently were similarly situated, and again I find no such evidence myself in the record. Accordingly, I conclude that Meder has not met her burden of producing evidence that, if credited, [*20] could support her claim of retaliation. [5]

> 5   Moreover, the passage of time between the filing of Meder's discrimination lawsuit, on March 22, 2002, and the alleged period in which the retaliatory activity took place, beginning in September 2003, was too great to permit any inference of discriminatory animus. "[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the

protected activity and the adverse employment action does not allow for an inference of causation." *Garrett v. Garden City Hotel, Inc.*, No. 05 CV 0962 (JFB)(AKT), 2007 U.S. Dist. LEXIS 31196, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases).

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on Meder's claims pursuant to the ADEA and the New York State Human Rights Law is granted. [6]

> 6   I therefore have no occasion to address defendants' remaining arguments.

[*21]   So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York

April 27, 2007



JESSE PERRY, Plaintiff, -against- STATE OF NEW YORK DEPARTMENT OF
LABOR, Defendant.

08 Civ. 4610 (PKC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2009 U.S. Dist. LEXIS 74006*

August 19, 2009, Decided
August 20, 2009, Filed

**SUBSEQUENT HISTORY:** Affirmed by *Perry v. N.Y. DOL, 2010 U.S. App. LEXIS 19422 (2d Cir. N.Y., Sept. 17, 2010)*

**COUNSEL:** [*1] Jesse Perry, Plaintiff, Pro se, Albany, NY.

For State of New York Department of Labor, Defendant: Monica Anne Connell, New York State Office of the Attorney General (24th Floor), New York, NY.

**JUDGES:** P. Kevin Castel, United States District Judge.

**OPINION BY:** P. Kevin Castel

**OPINION**

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge:

The plaintiff, who is *pro se*, asserts that the New York State Department of Labor ("DOL") discriminated and retaliated against him by declining to grant him an interview for a position as Labor Standards Investigator. He brings claims pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e, et seq.*, and the Age Discrimination and Employment Act of 1967, *29 U.S.C. §§ 621, et seq.* The defendant moves to dismiss the amended complaint pursuant to *Rule 12(b)(6), Fed. R. Civ. P.*

For the reasons explained below, the motion to dismiss is granted.

BACKGROUND

In an action commenced in 2002, he brought Title VII claims of race discrimination and retaliation against the DOL, resulting in a jury verdict in the DOL's favor. *Perry v. State of New York Dep't of Labor, et al.*, 02 Civ. 7566 (LBS) (S.D.N.Y. Apr. 26, 2006). The Second Circuit affirmed the verdict. *See 2007 U.S. App. LEXIS 10069 (2d Cir. May 1, 2007)*. [*2]

The present action arises out of the plaintiff's efforts in 2006 to apply for a position with the DOL, which he first learned about when he received a mass-mailed canvass letter. According to the plaintiff, the canvass letter was dated January 17, 2006 and stated that the plaintiff was eligible to interview for a vacant position as a labor standards investigator. (Am. Compl. at 120-21.) In bold-face type, the letter states, "This is not an offer of employment. Do not leave your present job." (Am. Compl. at 120.) The plaintiff checked a box to indicate his interest in the position, signed the letter and dated it January 24, 2006. (Am. Compl. at 120.) According to the plaintiff, on January 26, 2006, he telephoned to arrange an interview and was told by an administrative assistant that "the position is no longer available. The person who resigned from the position is no longer going to resign." (Am. Compl. at 10.) The plaintiff asserts that he later traveled to DOL offices in New York, NY at the letter's designated interview time, and learned that interviews for the position were proceeding despite the prior assertion to the contrary. (Am. Compl at 10-11.)

In or about December [*3] 2006, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the DOL failed to interview him due to his race, color and age. (Am. Compl. at 7.) The DOL responded with a 22-page answer, which is

2009 U.S. Dist. LEXIS 74006, *

annexed to the Complaint. (Am. Compl. at 31-49.) The DOL response to the EEOC included affidavits, which are annexed to the Amended Complaint, asserting that the individual who tendered resignation had rescinded the decision and remained in the position, so that the position ultimately was not vacated.[1] (Am. Compl. at 50-55.) On or about June 25, 2007, the EEOC dismissed the charge and issued a right-to-sue letter. (Am. Compl. at 14.)

> [1]   As part of their motion to dismiss, the DOL strongly contests whether the position was even open, but at the Rule 12 stage, I assume the truth of the plaintiff's allegation that the DOL was interviewing for the post.

This action was commenced on or about September 27, 2007. In an order dated May 19, 2008, then-Chief Judge Wood dismissed the action *sua sponte*, concluding that the complaint failed to conform with the minimal requirements of *Rule 8, Fed. R. Civ. P.* The order noted, among other things, that only "a very [*4] small portion" of an approximately 150-page complaint set forth assertions in support of a retaliation claim, and that the plaintiff had set forth no allegations of race discrimination in support of a new lawsuit distinct from the claims that were heard in the 2006 jury trial. (Order at 6.) The order granted plaintiff leave to file an amended complaint to cure any pleading defects. (Order at 8-9.)

Plaintiff then filed the Amended Complaint on September 19, 2008. Including exhibits, it is 131 pages in length, and purports to set forth claims under the ADEA and Title VII arising out of the DOL's failure to interview him for the position of labor standard investigator. (Am. Compl. at 1, 5.) According to the plaintiff, the DOL refused to interview him for the position due to his age and race, and retaliated against him for his participation in protected activities. (Am. Compl. at 5-12.)

## MOTION TO DISMISS STANDARD

A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)* (per curiam). Pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that [*5] they suggest.'" *Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)* (quoting *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)*).

*Rule 8(a)(2), Fed. R. Civ. P.* requires only "a short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)* (quota-

tion omitted) (alteration in original); *accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).* When a defendant tests the sufficiency of a complaint through a motion under *Rule 12(b)(6),* "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)* (quoting *Twombly, 127 S.Ct. at 1965*) (footnote omitted). This "does not require heightened fact pleading of specifics, [but] it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007)* (quoting *Twombly, 127 S. Ct. at 1974*) [*6] (footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 129 S. Ct. at 1949* (citations omitted). When a complaint's allegations are "merely consistent" with liability, it falls short of alleging a plausible claim for relief. *Id.* A complaint's legal conclusions are not afforded a presumption of truth. *Id. at 1949-50.*

## DISCUSSION

### I. *The Complaint Fails to State a Claim of Discrimination Based on Race or Age.*

A plaintiff is not required to come forth at the pleading stage with allegations sufficient to make a *prima facie* case of employment discrimination or to satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Swierkiewicz v. Sorema NA., 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)* (McDonnell Douglas sets forth an evidentiary standard, as opposed to a pleading standard). A complaint must nevertheless allege the essential elements of an employment discrimination [*7] claim, including discrimination on the basis of protected status. *Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).* A plaintiff is required to set forth factual circumstances from which discriminatory motivation can be inferred. *Id.* Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus. *Id.* In the absence of such allegations, dismissal at the pleading stage is warranted. *Id. at 112-13.*

Similarly, the ADEA requires a plaintiff to allege discriminatory conduct that is based on the age of the defendant. The text of the statute makes it "unlawful for

Case 1:11-cv-04567-SAS   Document 6-1   Filed 07/12/11   Page 45 of 54

Page 3
2000 U.S. Dist. LEXIS 74006, *

an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.' That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative [*8] influence on the outcome.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (alteration in original) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).

The Amended Complaint fails to set forth allegations of discrimination sufficient to make plaintiff's discrimination action "plausible on its face." Patane, 568 F.3d at 111-12 (quoting Twombly, 127 S. Ct. at 1974). To the limited extent that the Amended Complaint asserts discrimination, it does so only in a conclusory fashion. See Am. Compl. at 5 (". . . I was denied an interview based upon discriminatory bias."); 7 ("As a 48 year old African-American male I allege that the [DOL] discriminated against me in violation of Title VII and the [ADEA] . . . ."); 9-10 (citing statistics concerning minority composition of New York state public workforce). Such assertions constitute the type of "labels and conclusions" or the "formulaic recitation of the elements of a cause of action" deemed by Twombly as insufficient to state a claim for relief 127 S. Ct. at 1964-65. The complaint is otherwise silent as to any discriminatory purpose or motivation directed toward the plaintiff.

I am mindful that the pleading requirements [*9] in a Title VII action are "very lenient, even de minimis," Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998), and that as a party representing himself pro se, the plaintiff's complaint is to be read liberally. Graham, 89 F.3d at 79. The special solicitude afforded to a pro se litigant does not relieve the plaintiff of his obligations under Rule 8, however. In her order of May 19, 2008, Chief Judge Wood walked through the flaws in the plaintiff's initial complaint and afforded him leave to replead in order to cure those deficiencies. Among other things, the order noted that the plaintiff failed to state any facts supporting new claims of race discrimination, as opposed to assertions more relevant to the 2006 jury trial. (Order at 6.) It noted that the plaintiff "allege[d] no facts whatsoever relating to age discrimination." (Order at 6.) Chief Judge Wood directed the plaintiff to file an amended complaint "setting forth facts upon which a court could conclude that the defendant discriminated against him based on his race, color or age, and retaliated against him for his opposition to defendant's alleged un-

lawful practices. . . . Plaintiff must identify his own race, color [*10] or age, and that of co-workers or supervisors involved in the alleged incidents." (Order at 8.) The order directed the plaintiff to provide a more detailed account of the acts of discrimination and retaliation he alleges to have experienced, including the persons involved, relevant dates, the nature of the allegedly wrongful behavior and any other relevant facts, as well as an explanation as to how he exhausted his administrative remedies. (Order at 9.)

While the Amended Complaint has added further details relating to the purported DOL job opening, and has set forth a record as to administrative exhaustion, it does not sufficiently allege a claim of discrimination. The plaintiff alleges that on January 26, 2006, he called the DOL and spoke with Sharon Burnette concerning his interest in the canvass letter and the DOL's job opening. (Am. Compl. at 10.) She responded, "[O]h I just received your canvass letter, I was told to tell you that the position is no longer available. The person who resigned from the position is no longer going to resign." (Am. Compl. at 10.) The plaintiff alleges that on February 15, 2006, he arrived at the DOL office at 345 Hudson Street, New York, NY, and went [*11] to the sixth floor. (Am. Compl. at 10.) He spoke to an individual identified as Investigator Hammond and asked whether interviews were taking place that day. (Am. Compl. at 10.) Hammond confirmed that they were and reviewed the plaintiff's canvass letter. (Am. Compl. at 10.) Thereafter, Sharon Burnette came out to speak with the plaintiff, asked whether he was there to drop off the canvass letter, and indicated that he was supposed to call in order to schedule an interview appointment. (Am. Compl. at 11.) She offered to take a copy of the letter and to time- and date-stamp the letter. (Am. Compl. at 11.)

These allegations, while containing detailed accounts of dates, locations and individuals, do not support a claim of discrimination motivated by race or age. No allegation indicates discriminatory animus or treatment by the plaintiff that differed from other similarly situated individuals. Chief Judge Wood's order explained the need to incorporate such allegations, which must be set forth in order to plead a Title VII claim. Patane, 568 F.3d at 112. Because the plaintiff has failed to set forth any allegations that raise a possible inference of discriminatory motivation, his claims [*12] of discrimination based on age and race are dismissed.

B. The Complaint Fails to State a Claim of Retaliation.

Both Title VII and the ADEA make it unlawful to retaliate against an employee who has engaged in protected activity. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would

tend to show that: (1) she participated in a protected ac-
tivity known to the defendant; (2) the defendant took an
employment action disadvantaging her; and (3) there
exists a causal connection between the protected activity
and the adverse action." *Patane, 508 F.3d at 115* (citing
*Feingold v. New York, 366 F.3d 138, 156 (2d Cir.
2004)); Wanamaker v. Columbian Rope Co., 108 F.3d
462, 465 (2d Cir. 1997)* ("We approach [plaintiff's]
age-based retaliatory discharge claim in the same way as
retaliation claims under Title VII . . . ."). "Generally, the
ADEA, like Title VII, protects individuals from actions
injurious to *current* employment or the ability to *secure
future* employment." *Id. at 466* (emphasis in original).

The plaintiff asserts that his personnel records indi-
cate a pattern and practice of retaliation. (Am. Compl. at
5.) Yet it is unclear what he intends to claim [*13] as an
adverse action: the failure to interview him, or negative
comments placed in his personnel record while an em-
ployee of the DOL in 2001. (Am. Compl. at 2, 5-7.)
Plaintiff also contends that his personnel records were
tampered by the DOL "in direct proportion to each at-
tempt that I have made," and cites to a 2001 incident in
which he complained about being assaulted by a DOL
manager. (Opp. Mem. at 23.) The Amended Complaint is
similarly unclear as to what actions constitute a protected
activity. He asserts that he has been retaliated against due
to his participation in investigations by the DOL's Office
of the Inspector General and its discrimination unit. (Am.
Compl. at 5.) His submissions might also be read as as-
serting that the plaintiff was being retaliated against be-
cause of his lawsuit against the DOL, or perhaps because
of the unproductive course of settlement negotiations in
his prior litigation with the DOL. (Opp. Mem. at 20-22.)

The plaintiff's opposition papers on the present mo-
tion do not clarify his position. The plaintiff asserts that
on February 3, 2006, he called the chambers of Magi-
strate Judge Peck and communicated certain "concerns"
to a secretary about his discussions [*14] with opposing
counsel. (Opp. Mem. at 20-22.) That afternoon, he spoke
to opposing counsel in his then-pending litigation, who
stated that it was the DOL's position that it had done
nothing wrong. (Opp. Mem. at 21.) The plaintiff and the
DOL discussed settlement issues, but it appeared that the
parties were at an impasse. (Opp. Mem. at 21.) On Feb-
ruary 15, 2006, the plaintiff visited the DOL's offices on
Hudson Street, where, he claims, he was told that inter-
views for the inspector's position were proceeding. (Opp.
Mem. at 21.) He indicates that the decision not to inter-
view him was an act of retaliation. (Am. Compl. at 2;
Opp. Mem. at 21.) Plaintiff further asserts that certain
records pertaining to his previous employment with the
DOL had been shredded, including a June 22, 2001
document with the notation "WRT," which the plaintiff

indicates stood for "would not re-hire." (Opp. Mem. at
21.)

The plaintiff has not set forth a cognizable retalia-
tion claim. As Chief Judge Wood noted in the order, a
complaint fails to satisfy *Rule 8* if it is "so confused, am-
biguous, vague or otherwise unintelligible that its true
substance, if any, is well disguised." *Salahuddin v. Cu-
omo, 861 F.2d 40, 42 (2d Cir. 1988).* [*15] Generously
construing the Amended Complaint and plaintiff's oppo-
sition materials, it appears that the plaintiff's strongest
claim for retaliation would be that, in retaliation for
maintaining his 2002 litigation against the DOL, the
DOL refused to permit plaintiff to participate in inter-
views for a position of labor standards investigator. An
employer's decision to "blacklist" a former employee
may be an adverse action for the purposes of stating a
retaliation claim. *Wanamaker, 108 F.3d at 466.*

Construing the Amended Complaint as making this
assertion, the causal connection between the protected
activity (commencement of a 2002 lawsuit) and the al-
leged act of retaliation (refusal to interview the plaintiff
for a job position of which he was notified) is remote. A
plaintiff may assert causal connection through allega-
tions of retaliatory animus, or else by circumstantial evi-
dence, such as close temporal proximity between the
protected activity and the retaliatory action. *See, e.g.,
Summer v. U.S. Postal Service, 899 F.2d 203, 209 (2d
Cir. 2009).* The Amended Complaint does neither: It
contains no allegation of direct retaliatory animus, and as
to circumstantial evidence, a gap of more [*16] than
one year between protected activity and retaliatory action
is generally insufficient. *See, e.g., Mirick v. New York
City Employees' Retirement System, 2002 U.S. Dist.
LEXIS 8032, 2002 WL 868469, at *7 (S.D.N.Y. May 3,
2002)* (Lynch, J.) (temporal proximity may support an
inference of causation at the Rule 12 stage), *aff'd, 56
Fed. Appx. 70 (2d Cir.), cert. denied, 540 U.S. 912, 124
S. Ct. 293, 157 L. Ed. 2d 203 (2003); Nicastro v. Runyon,
60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999)* (retaliation
claims "routinely dismissed" when as few as three
months lapse between the protected activity and retalia-
tory conduct); *Castro v. Local 1199 Nat'l Health & Hu-
man Services Employees Union, 964 F. Supp. 719, 729
(S.D.N.Y. 1997)* (a one-year time gap is too long to sup-
port an inference of causal connection).

Moreover, the Amended Complaint contains no al-
legation that the decision makers responsible for filling
the position of labor standards investigator were aware
that the plaintiff had filed a lawsuit against the DOL or
aware of any activities cited in the Amended Complaint
that may be construed as allegedly protected.

The plaintiff's retaliation claim is dismissed.

*III. Dismissal With Prejudice is Warranted.*

A plaintiff who is granted leave to cure pleading deficiencies [*17] but fails to do so can be subject to dismissal without leave to replead. *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978); *Ellis v. Guarino*, 2004 U.S. Dist. LEXIS 16748, 2004 WL 1879834, at *13-14 (S.D.N.Y. Aug. 24, 2004).

Chief Judge Wood's order carefully walked through the plaintiff's initial complaint, identified the flaws and omissions contained therein, and set forth specific issues to be repleaded in an amended filing. While the plaintiff did come forth with additional details as to the dates and locations of certain incidents and the identities of certain individuals, the Amended Complaint did not, as noted, address several key points raised in Chief Judge Wood's order. Dismissal with prejudice is warranted in this case.

CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to enter judgment in favor of the defendant.

SO ORDERED.

/s/ P. Kevin Castel

P. Kevin Castel

United States District Judge

Dated: New York, New York

August 19, 2009

 LexisNexis®

JESSE PERRY, Plaintiff-Appellant, v. STATE OF NEW YORK DEPARTMENT OF LABOR, Defendant-Appellee.

09-4474-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

398 Fed. Appx. 628; 2010 U.S. App. LEXIS 19422

September 17, 2010, Decided

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, J.). *Perry v. State Dep't of Labor, 2009 U.S. Dist. LEXIS 74006 (S.D.N.Y., Aug. 19, 2009)*

**COUNSEL:** FOR PLAINTIFF-APPELLANT: JESSE PERRY, pro se, Albany, New York.

FOR DEFENDANT-APPELLEE: ROBERT C. WEISZ, Assistant Solicitor General (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Michael S. Belohlavek, Senior Counsel, on the brief), New York, New York.

**JUDGES:** PRESENT: PIERRE N. LEVAL, BARRINGTON D. PARKER, PETER W. HALL, Circuit Judges.

**OPINION**

[*629] **SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant Jesse Perry, *pro se*, appeals the district court's judgment dismissing his amended complaint alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq.*, and the Age

Discrimination in Employment Act of 1967 ("ADEA"), *29 U.S.C. § 621 et seq.* We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's dismissal for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, [**2] "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)*. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A claim will have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*.

Perry argues that the district court should not have dismissed his retaliation claim because: (1) the New York State Department of Labor ("DOL") falsely created the appearance that the person vacating the employment position he sought had returned to her position at the DOL, and this created an inference of retaliation; (2) the DOL should have known about his 2001 termination from a DOL position because he mentioned it in his 2006 employment application; and (3) the DOL's conduct in failing to fully disclose his personnel file in his prior litigation against the DOL gave [**3] rise to an inference of retaliation. However, Perry did not raise the first two of these arguments in the district court, and we decline to consider them in light of the well established general rule that a court of appeals will not consider an issue raised for the first time on appeal. *See Singleton v.*

368 Fed. Appx. 628, *; 2010 U.S. App. LEXIS 19422, **

*Wulff, 428 U.S. 106, 120-21, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976); see also Virgilio v. City of New York, 407 F.3d 105, 116 (2d Cir. 2005).*

We reject Perry's third argument as meritless. Perry does not explain how any misconduct by the DOL in the prior action is relevant to the present action, particularly in light of his acknowledgment that he ultimately received his personnel file before the commencement of the present action. Furthermore, we agree with the district court that the amended complaint did not allege facts plausibly suggesting a causal connection between the adverse action and the protected activity, and an

[*630]  independent review of the portions of the personnel file that Perry attached to the amended complaint does not suggest otherwise. Thus, we affirm the dismissal of the retaliation claim for substantially the same reasons stated by the district court. *See Perry v. State of New York Dep't of Labor, No. 08 Civ. 4610, 2009 U.S. Dist. LEXIS 74006, 2009 WL 2575713 (S.D.N.Y. Aug. 20, 2009).*

We  [**4] have considered all of Perry's arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.



LAURA RUSSO, Plaintiff, -against- THE NEW YORK AND PRESBYTERIAN HOSPITAL, NEW YORK HOSPITAL QUEENS and MARK ADKINS, M.D., Defendants.

09-CV-5334(DLI)(LB)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2011 U.S. Dist. LEXIS 28202*

**March 3, 2011, Decided**
**March 3, 2011, Filed**

**COUNSEL:** [*1] For Laura Russo, Plaintiff: David George Gabor, LEAD ATTORNEY, Hope Senzer Gabor, Gabor & Gabor, Garden City, NY.

For New York Hospital Queens, Defendant: Alexia J. Kantor, LEAD ATTORNEY, Jessica Amy Chichaco, Nixon Peabody LLP, Jericho, NY.

For The New York and Presbyterian Hospital, Defendant: Meredith Simmons Lom, LEAD ATTORNEY, Epstein Becker & Green, New York, NY; James S. Frank, Epstein Becker & Green, P.C., New York, NY.

For Mark Adkins, MD, Defendant: Michael D Smith, LEAD ATTORNEY, Cornell University, Office of University Counsel, New York, NY.

**JUDGES:** DORA L. IRIZARRY, United States District Judge.

**OPINION BY:** DORA L. IRIZARRY

**OPINION**

<u>SUMMARY ORDER</u>

**DORA L. IRIZARRY, United States District Judge:**

On December 7, 2009, Plaintiff Laura Russo filed this action against New York and Presbyterian Hospital ("NYPH") and New York Hospital Queens ("NYHQ"), alleging that she was discriminated against on the basis of sex. On May 19, 2010, Plaintiff served Mark Adkins,

M.D. with the Second Amended Complaint, which named him as a defendant. The claims against Adkins are for sexual harassment and retaliation in violation of New York State Executive Law and New York City Human Rights Law. Adkins moves pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* [*2] to dismiss the claims against him. For the reasons set forth below, Adkins' motion to dismiss is granted. However, in light of the fact that Plaintiff is granted leave to replead, the dismissal of the complaint is held in abeyance.

**BACKGROUND**

In 1994, Plaintiff was hired by the defendants as a Perfusionist, which is a position responsible for supporting the physiological and metabolic needs of the surgical patient so the surgeon can operate. (Compl. ¶¶ 11, 13.) She maintained that position until her termination on May 28, 2008. (Compl. ¶ 12.)

In September 2004, defendant Dr. Mark Adkins was appointed Chairman of Cardiothoracic Surgery at NYHQ. (Compl. ¶ 14.) Plaintiff alleges that Adkins would "brush up against Russo, block her path, and in turn try to force Russo to brush up against him. Additionally, Adkins would block Plaintiff's path" and force her "to be stuck in a position directly in front of him." (Compl. ¶ 17.) Plaintiff further alleges that Adkins would "act in a physically intimidating manner towards women" and "make repeated comments of an underlying sexual nature towards women." (Compl. ¶ 18.) Plaintiff also alleges that, during surgery, Adkins would make derogatory comments [*3] about women and breast sizes,

and he would play "inappropriate and sexually charged music." (Compl. ¶ 19.)

Plaintiff alleges that, on May 15, 2008, she assisted a procedure performed by Adkins. (Comp. ¶¶ 26-31.) After the procedure was finished, the primary perfusionist told Plaintiff that she was permitted to go home. (Compl. ¶¶ 27-42.) Plaintiff left the hospital. (Compl. ¶ 42.) Plaintiff alleges that, after she left, there was a complication with the patient, and Adkins wanted Plaintiff to return to the hospital. (Compl. ¶ 46.) Plaintiff alleges that, when she returned to the operating room, "Dr. Adkins verbally attacked the plaintiff, yelling things such as 'Don't you ever fucking do that again.'" (Compl. ¶ 52.) Plaintiff further alleges that Adkins "screamed and yelled at Russo in a vulgar manner" and "cursed approximately twenty (20) times, many of which were directed solely at Ms. Russo." (Compl. ¶ 53.) Plaintiff also alleges that Adkins yelled, in the presence of six colleagues, "Is this your plan? Your fucking plan to get your fucking Chinese boyfriend back here?" (Compl. ¶ 53.)

Plaintiff called the "covering in charge perfusionist" because "the vulgarity and Adkins' demeanor [*4] were getting worse." (Compl. ¶¶ 56-57.) Plaintiff claims that she told the in charge perfusionist "that Adkins was screaming, using vulgarity and implying that in some way . . . . Russo had planned this event." (Compl. ¶ 57.) Plaintiff also told the in charge perfusionist that Adkins was "demonstrating 'abusive physician's behavior.'" (Compl. ¶ 57.)

On May 16, 2008, after Plaintiff returned home, William DeBois, Plaintiff's supervisor, called Plaintiff. (Compl. ¶ 71.) Plaintiff informed DeBois that "Adkins had harassed and discriminated against her." (Compl. ¶ 71.) On May 19, 2008, Plaintiff and DeBois continued their discussion, and Plaintiff "requested to have a meeting with DeBois and Adkins, in order to resolve concerns about sexism, language, vulgarity, and harassment that she had been subjected to." (Compl. ¶ 72.) On May 20, 2008, Plaintiff and DeBois spoke, and DeBois informed Plaintiff that "they would all meet the next day." (Compl. ¶ 77.) That evening, Plaintiff received a phone call from DeBois, who said that Plaintiff was relieved of all duties effective immediately (Compl. ¶ 78.)

On May 22, 2008, Plaintiff went to Human Resources at NYP and met with Rachel Bautista, Plaintiff's [*5] Human Resources Representative, regarding Plaintiff's "concerns of discrimination and retaliation." (Compl. ¶ 80.) Bautista suggested that Plaintiff "write it all down and give it to her." (Compl. ¶ 82.) On May 22, 2008, Plaintiff provided Bautista with a summary of what happened. (Compl. ¶ 83.) On May 27, 2008, Plaintiff went to Human Resources at NYHQ, where plaintiff met with two individuals who took notes on what Plain-

tiff said. On May 28, 2008, Plaintiff met with DeBois at NYP and DeBois informed Plaintiff that "he and Human Resources decided to terminate her employment effective immediately." (Compl. ¶ 86.)

## STANDARD OF REVIEW

Under *Federal Rule of Civil Procedure 8(a)(2)*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under *Rule 8* does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id. (quoting Twombly, 550 U.S. at 557)*. [*6] A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly, 550 U.S. at 555*. On a *Rule 12(b)(6)* motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)*. The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)*; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)*.

## DISCUSSION

### 1. RETALIATION

"Under both the New York State and New York City Human Rights laws, it is unlawful to retaliate against an employee for opposing discriminatory practices." *Harper v. New York City Housing Authority, 673 F. Supp. 2d 174, 181 (S.D.N.Y. 2009)* (citing *N.Y. Exec. Law §§ 290 et seq.*; [*7] *N.Y. City Admin. Code §§ 8-101 et seq.*). "To state a claim for relief, a plaintiff must allege that '(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action.'" *Id. (citation omitted)*.

### a. Failure to Allege that Adkins Participated in Plaintiff's Termination

Adkins argues that the complaint fails to allege that he participated in Plaintiff's termination. The retaliation provision of the NYHRL, *New York Executive Law § 296(7)*, provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." Moreover, *New York Executive Law § 296(6)* provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [*8] under this article, or to attempt to do so." Pursuant to these two provisions, "an individual defendant may be held liable under the NYHRL for actual participation in or aiding and abetting an employer's retaliatory conduct." *King v. Town of Wallkill, 302 F. Supp. 2d 279, 296-97 (S.D.N.Y. 2004)* (citing *Nefichi v. New York Univ., 14 F. Supp. 2d 473, 491-92 (S.D.N.Y.1998)*); see also *Dantuono v. Davis Vision, Inc., 2009 U.S. Dist. LEXIS 122119 2009 WL 5196151, at *12 (E.D.N.Y. Dec. 29, 2009)*, ("Since § 296 uses virtually identical language to § 8-107 of the NYCHRL, claims under both statutes are subject to the same analysis." *Hubbard v. No Parking Today, Inc., 2010 U.S. Dist. LEXIS 101218, 2010 WL 3835034, at *10 (S.D.N.Y. Sept. 22, 2010)* (internal quotation marks omitted); *Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009)*; *Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003)*).

Here, the complaint alleges that the decision to terminate Plaintiff was made by DeBois and NYPH Human Resources Department. (Compl. ¶ 86 ("Russo met with DeBois at NYP at which time DeBois informed Russo that he and Human Resources decided to terminate her employment effective immediately.").) The complaint fails to allege that [*9] Adkins participated or had any involvement in the decision to terminate Plaintiff. Indeed, the complaint does not allege that Adkins had any discussions with Human Resources or DeBois prior to Plaintiff's termination. (See, e.g., Compl. ¶¶ 80-87.) The retaliation claim is therefore dismissed.

### b. Failure to allege that Plaintiff Participated in a Protected Activity

Adkins also argues that Plaintiff has failed to allege that she participated in a protected activity because, when Plaintiff complained to NYPH about Adkins, she did not inform them that she believed Adkins was motivated by gender. Plaintiff's own allegations show that, while she did complain about certain problems she was having at work, she did not complain that she was being

discriminated against on account of her gender. Although a plaintiff is not required to "use 'legal terms or buzzwords'" for his or her complaint to be considered protected activity, the plaintiff must complain of discrimination in "sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, or national origin." *Brummell v. Webster Central School Dist., No. 06-CV-6437, 2009 U.S. Dist. LEXIS 7644, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009)*. [*10] Plaintiff's alleged statements to her employer would not have put them on notice that Plaintiff believed she was being discriminated against on the basis of gender.

For example, although the complaint alleges that Plaintiff informed her superiors and Human Resources that she experienced harassing behavior, she allegedly told her superiors only that Adkins was "using vulgarity" and was demonstrating "abusive physician's behavior." (Compl. ¶ 57.) The only allegation indicating that Plaintiff possibly sought to inform her employer of harassment on the basis of gender is that Plaintiff requested a meeting with DeBois and Adkins "in order to resolve concerns about sexism, language, vulgarity and harassment." (Compl. ¶72.) However, the complaint does not allege that Plaintiff indeed informed DeBois that she was discriminated on the basis of her gender.

Moreover, the complaint does not specify what Plaintiff told her superiors or Human Resources, nor does she attach to the complaint any of the documents she allegedly provided to Human Resources. Furthermore, upon examination of the events that occurred on May 15, 2008, several days prior to Plaintiff's meeting with Human Resources, it [*11] is clear that these events did not involve discrimination on the basis of sex. For example, Adkins' statements regarding Plaintiff "having a boyfriend" and the statements falsely insinuating "that she was having an affair" do not demonstrate discrimination based on gender. See, e.g., *Brant v. County of Dutchess, 2008 U.S. Dist. LEXIS 10941, 2008 WL 418339, at *5 (S.D.N.Y. Feb. 11, 2008)* (statements about an alleged extramarital affair, even if "unpleasant and degrading" were not based on gender); see also *Brown v. Henderson, 257 F.3d 246, 255 n.3 (2d Cir. 2001)* (stating there was "no indication" that "mockery" of plaintiff's alleged affair with a married coworker "was related to her being a woman").

In sum, there is no evidence that Plaintiff engaged in a protected activity. See, e.g., *Gonville v. Wal-Mart Stores, Inc., 2009 U.S. App. LEXIS 4955, 2009 WL 579423, at *1 (2d Cir. Mar. 4, 2009)* (plaintiff's complaints could not "constitute a protected activity, as none of her complaints implicated any conduct that could be considered discrimination on the basis of sex or any other protected class").

... U.S. Dist. LEXIS 28202, *

Plaintiff argues that she needed only a good faith, reasonable belief that the employment practice was unlawful. Although that is true, Plaintiff [*12] must still inform her superiors that she believes the discrimination was on the basis of her sex. If Plaintiff merely had the belief, but did not share that with her superiors, then she did not engage in a protected activity. See, e.g., Foster v. Humane Society of Rochester and Monroe County, Inc., 724 F. Supp. 2d 382, 2010 WL 2867325, at *10 (W.D.N.Y. 2010) ("In the case at bar, plaintiff does not allege that she engaged in protected activity. Her own allegations, and the documents she relies on, show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex."); Sullivan v. Chappus, 711 F. Supp. 2d 279, 2010 WL 1816647, at *7 (W.D.N.Y. 2010) ("The mere insertion by plaintiff's attorney of the legal term of art 'hostile environment' in this claim does not render this a viable cause of action[ ] under the HRL[,] where the facts alleged here show no more than that plaintiff complained about matters falling completely outside the scope of the HRL.").

Plaintiff also argues that "Adkins does not offer evidence of what Russo said to Human Resources." (Pl. Opp. at 14.) However, Plaintiff is responsible for properly alleging [*13] the basis for her claims, and a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Plaintiff also tries to supplement the complaint and add allegations regarding what she told Human Resources. On a motion to dismiss, however, "a court considers only the allegations made in the complaint and any documents attached thereto, and thus disregards allegations made in a memorandum of law." Khamdayev v. Times Square Alliance, 2010 U.S. Dist. LEXIS 51667, 2010 WL 2680552, at *2 n.4 (S.D.N.Y. May 30, 2010) (citations omitted).

Therefore, Plaintiff's retaliation claim is dismissed, without prejudice. However, Plaintiff is granted leave to replead the retaliation claim. The dismissal will be held in abeyance pending the filing of an amended complaint.

## 2. DISCRIMINATION

Adkins argues that the discrimination claim is barred by the statute of limitations. "Discrimination claims under the NYSHRL and NYCHRL are subject to three-year statutes of limitations for filing a complaint." See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d); see also Hill v. Citibank Corp., 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004).

The Complaint was [*14] filed on May 19, 2010, and thus, to be timely under the statute of limitations, the

plaintiff's claims must have arisen after May 19, 2007. The only event Plaintiff alleges occurred after May 19, 2007 was the May 15, 2008 incident. As noted above, the May 15, 2008 event, as described by Plaintiff in the complaint, did not involve discrimination on the basis of sex. However, in Plaintiff's complaint, she did include several other examples of conduct that could possibly rise to the level of harassment on the basis of sex, although the complaint did not specify the dates on which the events occurred. In light of the fact that Plaintiff will be adding additional information regarding her retaliation claim, Plaintiff is granted leave to replead the discrimination claim so that she can add the relevant dates and any additional information that would support her discrimination claim.[1]

[1] The court also notes that, in response to Adkins' motion to dismiss, Plaintiff refers to the complaint Plaintiff filed with the EEOC and refers to the statute of limitations under federal law. However, the claims against Adkins are based only in state and city law. Plaintiff has asserted no federal claims against [*15] Adkins. Therefore, the federal statute of limitations is irrelevant.

Notably, Plaintiff also contends that Adkins' acts that occurred prior to the statutory time period should also be considered as part of a continuing violation that created a hostile work environment. Because Plaintiff is granted leave to amend the complaint, and additional facts may be alleged by the Plaintiff, the court will not address this argument at this time.

## 3. SUPPLEMENTAL JURISDICTION

Adkins further argues that the court should decline to exercise supplemental jurisdiction over the claims against him. Pursuant to 28 U.S.C. § 1367(a), with few exceptions not relevant here, in any civil action over which the court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Pursuant to 28 U.S.C. § 1367(c), however, a court may decline to exercise supplemental jurisdiction over a state claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates [*16] over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Adkins argues that the application of New York Executive law to individuals constitutes a novel state law

theory that is improper for federal court resolution because "there is no liability for individuals for sex discrimination under federal law." (Def. Mem. 13.) In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), the United States Court of Appeals for the Second Circuit held that under the "aiding and abetting" language of *New York Executive Law § 296(6)*, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NY]HRL." Although New York state courts have not uniformly accepted the Second Circuit's interpretation of state law in *Tomka*, "it is binding upon this Court." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 296-97 (S.D.N.Y. 2004). Moreover, the majority   [*17] of the other federal district courts in New York considering the issue have elected to follow the lead of the Second Circuit in *Tomka* and apply its rule of "actual participation" to hold individual defendants personally liable under the NYHRL for discriminatory conduct via § 296(6). *See, e.g., King*, 302 F. Supp. 2d at 296-97; *Perks*, 251 F. Supp. 2d at 1160-61 (citing additional case law). Therefore, Plaintiff's allegations do not raise novel or complex issues of state law.

Moreover, Plaintiff's claims do not substantially predominate over the remaining federal claim against NYPH and NYHQ. Notably, this court has not dismissed all claims over which it has original jurisdiction. Plaintiff's federal claims against NYPH and NYHQ, which arise out of the same facts that form the basis of plaintiff's state law claims against Adkins, have not been dismissed. Therefore, the court finds that the exercise of supplemental jurisdiction is appropriate here. *See, e.g., Patterson v. Xerox Corp.*, 732 F. Supp. 2d 181, 2010 WL 3063970, at *9 (W.D.N.Y. 2010) ("[T]he exercise of supplemental jurisdiction over the State HRL claims is appropriate since Plaintiff's Title VII claims and the HRL claims are 'so related' within   [*18] the meaning of *Sec-*

*tion 1367(a)* since both the federal and state claims arise out of the same facts and circumstances."); *Siddiqui v. United Financial Mortg. Corp.*, 2008 U.S. Dist. LEXIS 52799, 2008 WL 2705217, at *2 (W.D.N.Y. July 10, 2008) (exercising supplemental jurisdiction over New York State Human Rights Law claims against an individual because the claims arose out of the same facts as the Title VII claims against the employer); *Selmanovic v. NYSE Group, Inc.*, 2007 U.S. Dist. LEXIS 94963, 2007 WL 4563431, at *8 (S.D.N.Y. Dec. 21, 2007); *King*, 302 F. Supp. 2d at 296-97 ("We will, therefore, decline defendants' invitation and will exercise our supplemental jurisdiction to apply the clearly articulated rule of *Tomka* to the facts of the present case."); *Velasquez v. Mirv Coffee, Inc.*, 1996 WL 706910 (S.D.N.Y. Dec. 6, 1996).

## CONCLUSION

For the reasons set forth above, Adkins' motion to dismiss is granted, and the claims against him are dismissed without prejudice. However, in light of the fact that Plaintiff is granted leave to replead, the dismissal of the complaint is held in abeyance. Any amended complaint must be filed no later than April 4, 2011. If plaintiff does not file an amended complaint within this time, the claims dismissed herein   [*19] without prejudice will be deemed to be dismissed with prejudice and a dismissal order will be entered.

SO ORDERED.

Dated: Brooklyn, New York

March 3, 2011

/s/

DORA L. IRIZARRY

United States District Judge